## Langhorne, et al. v. Turman.

(Decided January 31, 1911.)

### Appeal from Boyd Circuit Court.

1. Railroads—Right of Way—Blasting—Nuisance.—Where a railroad purchases a right of way through a man's farm, and by blasting throws rock and other debris on the remainder of the farm to such a distance and to such an extent as to injure the buildings and destroy the crops thereon, it is guilty of a nuisance, and therefore liable for damages without regard to whether the blasting was negligently done or not.

2. Measure of Damages.—If in digging or blasting on its right of way causes the soil of the adjoining land to slip and it then uses the soil for the purpose of making fills, on its right of way, it is liable in damages for the soil so taken and used, and an instruction authorizing a recovery for the reasonable value of the soil is proper.

S. S. WILLIS, L. T. EVERETT and WORTHINGTON, COCHRAN & BROWNING for appellants.

DINKLE and PRICHARD for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Appellant, Chesapeake & Ohio Railway Company, operates a line of railway from Catlettsburg, up the Big

Sandy river, to Pikeville, Kentucky. Appellee, Rachel Turman, is the owner of a tract of land, containing about 44 acres, through which the line of railway runs and which is situated near the dividing line between Boyd and Lawrence counties. Appellee purchased this tract of land in the year 1902. The Big Sandy Division of the Chesapeake & Ohio Railway Company had been constructed through appellee's property for several years before she purchased it. Some time after appellee's purchase the railway company, desiring to change the grade and location of its line of railway, purchased from appellee and her husband an additional right of way through her property. The strip of land so purchased was about 50 feet wide and ran near the base of a hill. In the year 1905 the railway company moved its track from near the Big Sandy river towards the hill. In the year 1906 the railway company and appellants, C. D. Langhorne and Allen Langhorne, its contractors, placed upon the right of way purchased from appellee a large steam shovel which removed the dirt from the hill. The dirt so taken was placed by appellant upon its cars and used by it in building and maintaining fills along its right of way up and down the Big Sandy river. The earth and stone so removed were taken from the hillside by appellant for a distance of 100 to 150 feet above and beyond the railway right of way. For the purpose of removing the dirt, appellant did considerable blasting. Before appellant began the work of blasting and excavation, appellee had planted the land in an orchard consisting of about 1,100 peach trees. About 500 of these trees were fifteen months old and were planted on the land from which the earth and stone were removed.

After stating that she was the owner of the tract of land, describing it in a general way, appellee charged that appellants, during the months of July, August, September and October, 1906, unlawfully and without right and authority, and against her will, entered upon said land, dug up and carried away about 50,000 cubic yards of stone, earth and gravel, cut down the timber growing thereon, injured and destroyed her crop of watermelons, corn, beans and pumpkins, and by blasting the earth and stone by dynamite caused to be thrown upon the land and upon the houses large quantities of stone and earth, thereby greatly injuring and damaging her, and she asked damages in the sum of $2,000. Thereafter appellee amended her petition and alleged that the rock, stone and gravel caused to be thrown upon the land by

the use of dynamite, fell upon her house, crops, watermelons, corn, beans and pumpkins, and crushed, injured and killed same, and injured her houses by falling upon same and breaking the roof, striking and breaking the window panes, and that in dynamiting and blasting, as aforesaid, and carrying away 50,000 cubic yards of earth, stone and gravel, which was of the value of ten cents per cubic yard, and in removing the dirt from said land destroying the fruit trees growing thereon, she had been damaged in the sum of $2,000.

Appellant, Chesapeake & Ohio Railway Company, after its demurrer to the petition was overruled, filed an answer in which it denied the title of appellee to the tract of land claimed to be owned by her, and all the allegations of the petition; it also pleaded that appellants, C. D. Langhorne and Allen Langhorne, were independent contractors. Appellants, C. D. Langhorne and Allen Langhorne, filed an answer denying the allegations of the petition. The affirmative allegations of the answer were denied by reply.

On the 18th day of January, 1910, a little over three years after the filing of the petition, appellants offered to file an amended answer, wherein they pleaded that they purchased a 50-foot right of way from appellee on May 16th, 1903; that it was agreed and understood by the grantors that the strip of ground so purchased should be used by the railroad company for the purpose of making excavations therein and changing the grade of said road; that in making said excavations and changing the grade, certain parts of appellee's land were, without fault upon their part, caused to slip in said excavations; that by reason of the before-mentioned conveyance and appellee's knowledge of the uses that were to be made of the strip of land, appellee was estopped to claim damages from appellants because of any slipping of her ground or other property. The court declined to permit the amended answer to be filed, but it was made a part of the record. This action of the court is not relied upon as a ground for reversal.

While there is some evidence on the part of appellants that they simply blasted and excavated on the right of way, and that appellee's land, consisting of about an acre and a quarter, together with the trees thereon, slipped down on the right of way, yet they admitted that in two or three instances they actually blasted outside of the right of way on appellee's land. Appellants con-

tend, however, that the work of excavation and blasting was carefully done.

The evidence for appellee shows that she had in cultivation a field of watermelons, consisting of about 800 hills. She also had in cultivation some corn, beans, tomatoes and other garden truck. There were two dwelling houses on the land. In removing the earth and stone from appellee's land by the use of dynamite the gravel and stone were thrown upon the field of watermelons, corn, beans, etc., and the houses. The crops were almost completely destroyed and the houses injured. The blasting and shooting was done with so much force that it caused large rocks to fall in the Big Sandy river, and even on the other side of the river, a distance of 400 yards. The blasting and excavation were not confined to the right of way, but those doing the work frequently went beyond the right of way on to appellee's premises. Many trees were destroyed.

Upon the submission of the case the jury returned the following verdict:

"We, the jury, agree and find in favor of the plaintiff the sum of $587.50, as following, viz:

| | | |
|---|---|---|
| 11,000 cubic yards earth, 2 1-2 per cube yard.. | $275 | 00 |
| 3 cedar trees, at $1 ........................ | 3 | 00 |
| 2 walnut trees, at $5 ........................ | 10 | 00 |
| 146 peach trees, at 50c ...................... | 73 | 00 |
| To repairs on houses ....................... | 16 | 50 |
| To corn and bean crop ...................... | 10 | 00 |
| To 800 hills watermelons, at 25c per hill ..... | 200 | 00 |
| | $587 | 50" |

From the judgment entered upon the foregoing verdict this appeal is prosecuted.

It is earnestly insisted that the court erred in its instructions to the jury.

By instruction No. 1 the court told the jury that, if they believed plaintiff was the owner of the land described in the petition and that the defendants, without plaintiff's consent, entered upon the land and cut, took and removed therefrom 50,000 cubic yards of stone, earth and gravel, or any quantity thereof, or cut down, destroyed or deprived plaintiff of two walnut and three cedar trees, or any such trees, then they should find for the plaintiff and award her the reasonable actual value of the stone, earth and gravel and trees so taken, not exceeding, however, as to the stone, earth and gravel

50,000 cubic yards at ten cents per cubic yard, or $5 for each of the walnut trees, or $1 for each of the cedar trees.

By instruction No. 2 the court told the jury that, if defendants, while grading through plaintiff's farm on the railway company's right of way, used dynamite or some similar strong explosive, and by the use thereof threw stone, gravel and dirt upon plaintiff's land, and injured or destroyed plaintiff's crop of watermelons, corn or beans, or any of them, growing on said land, or injured or damaged the dwelling house, they should find for the plaintiff the reasonable market value of the crops, if any, so destroyed, and the fair and reasonable injury to the dwelling house.

By instruction No. 3 the court told the jury that, if defendants, without plaintiff's consent, entered upon her land outside of the right of way owned by the railway, and by blasting, excavating or otherwise on plaintiff's land, injured or destroyed any peach trees on said land, and the jury should further believe that plaintiff was the owner, or had an interest in the trees so destroyed, they should find for the plaintiff the reasonable actual value of the trees so destroyed at the time and place of said injury.

By instruction No. 4 the court told the jury that the railway company and its agents, Langhorne and Langhorne, had the right to enter upon that portion of plaintiff's land included within the railway right of way and to cut and remove from such right of way the soil and rock found thereon so as to fit same for a railroad, and that it had the right, in a prudent and careful manner, to use dynamite or other explosives; and that they should not allow plaintiff anything for the soil or rock cut and removed from the right of way.

By instruction No. 5 the court told the jury that, if the dirt in question slipped on the railway right of way, it had a right to remove same therefrom and to make the right of way reasonably safe for its use, and the plaintiff could not recover damages therefor, unless the jury believed that the dirt so removed was converted by the railroad to its own use without the consent of plaintiff, express or implied, under all the circumstances of the case.

Instructions Nos. 1 and 3 are not susceptible of criticism, for they are predicated upon the idea that appellants actually entered appellee's premises and engaged in the blasting and excavation. Appellants contend,

however, that instruction No. 2 is erroneous because it authorized a recovery without regard to whether or not the blasting on the right of way was negligently done. It may be conceded that there is authority to the effect that the right to remove rock by blasting for a roadbed is one of the necessary incidents to the right of construction granted to a railroad by its legislative franchise, and the proper exercise of this right, therefore, does not give a cause of action to those who suffer consequential damage therefrom. This rule is based upon the idea that such damages as necessarily result from blasting should be, and are, presumed to be included in the allowance of compensation under the various eminent domain acts. Under the rule laid down, a railroad company is liable for damages only in the event of its carelessness or negligence in the execution of the work, as by its failure to remove the stone thrown upon neighboring land by blasting. (Whitehouse v. Androscoggin R. Co., 52 Me., 208; Dodge v. Essex County, 3 Met. (Mass.) 380; Brown v. Providence, Etc., R. Co., 5 Gray (Mass.), 35; Blackwell v. Lynchburg, Etc., R. Co., 111 N. C., 151; Sabin v. Vermont Cent. R. Co., 25 Vt., 363; Watts v. Norfolk, Etc., R. Co., 39 W. Va., 196.) In the case of Booth v. Rome, Etc., R. Co., 140 N. Y., 267, the same rule is laid down, although in that case there was no technical trespass, and it conclusively appeared that the company used due care. We are not, however, disposed to follow the doctrine to the extent announced in those cases. The principle of law that would permit a railroad, that has purchased or condemned a right of way through the property of another, actually to invade and destroy the other's property, although the company may be able to prove that it was done in the exercise of ordinary care, is not, in our opinion, consistent with sound reasoning or natural justice. It seems to us that the correct rule is that where the blasting operations result in a direct trespass upon the premises injured by casting soil or rocks thereon, the liability of the company causing the injury is absolute, and it must respond in damages irrespective of the question of negligence or want of skill. In other words, the purchase of a right of way through a man's farm does not give to a railroad company the right to destroy the remainder of his farm by carefully blasting stones and other debris thereon. Where there is an actual invasion of another's premises in the manner pointed out, the act itself is a nuisance and shows a negligent use of the right of way by the railroad company. It is a well-known fact

that blasting can be done in such small quantities and with such means of protection as to confine the debris to a very small space. In this way blasting can be done without creating a nuisance. In the case of Hay v. Cohoes Co., 2 N. Y., 159, the defendant corporation dug a canal upon its own land for purposes authorized by its charter, and in doing this it was necessary to blast rock with gunpowder, and the fragments were thrown against and injured plaintiff's dwelling upon land adjoining. The court held that the defendant was liable for the injury, although no negligence or want of skill in doing the work was alleged or proved. The conclusion of the court was based upon the idea that, while any person may pursue a lawful trade or perform a lawful act, he can not create a nuisance on the premises of another. In discussing the matter the court said: "In this case, the plaintiff was in the lawful possession and use of his own property. The land was his, and, as against the defendant, by an absolute right from the centre usque ad coelum. The defendants could not directly infringe that right by any means or for any purpose. They could not pollute the air upon the plaintiff's premises (Morley v. Pragnell, Cro. Car. 510), nor abstract any portion of the soil (Rol. Abr. 565, note; 12 Mass., 221); nor cast anything upon the land (Lambert v. Bessy, Sir T. Raymond, 421), by any act of their agents, neglect, or otherwise." As the instruction complained of submitted to the jury the question whether or not the rocks and debris were thrown upon appellee's land, we conclude that this was all that was necessary.

The court did not err in authorizing, by instruction No. 5, a recovery of the reasonable value of the dirt and soil that slipped on to the right of way and was removed and converted to its use by the railway company. The rule in this State is that, where a land-owner, by digging on his own land, has deprived the land of his neighbor of its natural support, he is, whether negligent or not, liable in damages to his neighbor, not only for the actual injury to the soil, but for injuries to buildings. (Louisville & Nashville R. Co. v. Bonhayo, 94 Ky., 67.) In this case the appellants not only took away the natural support to appellee's soil, but they actually carried away the soil and converted it to their own use. While appellant railway company claims that the rock and soil had no value, there is evidence tending to show that it did have commercial value, and it was sufficiently valuable

for appellant to make use of it in building and maintaining fills along its right of way.   (Patterson v. Waldman, 20 Ky. Law Rep., 514; Merriwether v. Bell, et al., 22 Ky. Law Rep., 844.)

Upon the whole case, we conclude that the instructions given by the trial court were even more favorable than appellants were entitled to.   That being true, and being unable to say that the finding of the jury is either excessive or flagrantly against the evidence, we conclude that the judgment should be affirmed; and it is so ordered.