## Chesapeake & Ohio Railway Company v. May.

(Decided March 5, 1914.)

### Appeal from Floyd Circuit Court.

1. Railroads—Right of Way—Lateral Support—Damages to Adjacent Owner.—A railroad company that obtained a right of way "on, over and through which to construct, maintain and operate a single or double track railway" was liable to an adjacent land owner for the damage he sustained by the slipping of his land caused by the company making a deep excavation on the property line between its right of way and his land.

2. Lateral Support—Liability for Removing.—The owner of land adjacent to the lands of another has no right to remove the earth and thus withdraw the natural support of his neighbor's

soil, and if he does he is liable, without reference to whether the removal of the lateral support was accompanied by acts of negligence or not.

3. Railroads—Right of Way—Injury to Land of Adjoining Proprietor.—Under section 242 of the Constitution, providing that corporations, before taking property for public use, shall make just compensation for the property taken, injured or destroyed, a railroad company is liable to an adjacent land owner for damage to his land by removing the lateral support afforded by its right of way, whether it is negligent or not.

4. Railroads—Right of Way—Contracts Covering Damage to Adjacent Land.—A person who conveys a right of way to a railroad company and the company have a right to contract with reference to the damages that may result from the use to which the right of way may be put, and such a contract, if duly recorded, would run with the land and be a protection to the railroad company against subsequent owners.

5. Railroads—Condemnation Proceedings May Include Damages to Adjacent Lands.—If it is made to appear that in condemnation proceedings damages were assessed and recovered for any injury that might be done to adjacent land by any use that the right of way might be put to, the company would be protected from liability to the owner or his successors in title.

6. Railroads—Right of Way—Rights and Liabilities of in Respect to Adjacent Land Owners.—Under the present Constitution a railroad company, in the use of its right of way, occupies the same relation as any other adjoining proprietor when the instrument under which it holds does not confer upon it larger rights than usually follow from the sale and purchase of land under ordinary deeds.

7. Railroads—Right of Way—Rights and Liabilities in Respect to.—Where a railroad acquired by condemnation or purchase a right of way, it may use it in any way it pleases not incompatible with the duty it owes to adjacent proprietors, and its obligation under the Constitution not to take, injure or destroy property outside the limits of its right of way.

HARKINS & HARKINS, WORTHINGTON, COCHRAN & BROWNING and F. T. D. WALLACE for appellant.

MAY & MAY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In 1902 E. B. Auxier and his wife, in consideration of $2,685.00, sold and conveyed to the predecessor in title of the appellant company a right of way "on, over and through which to construct, maintain and operate a single or double track railway." The right of way thus conveyed was one hundred feet in width. After this E.

B. Auxier died and his land adjoining the right of way conveyed was divided among his heirs, one tract being set apart to the appellee, Margaret May.

The land allotted to Mrs. May was situated on both sides of the right of way, and a part of it was a steep hillside, the right of way being at the base of the hill. The railroad company, desiring to build an additional track on its right of way, found it necessary to obtain a supply of dirt for the purpose of making an embankment, and this dirt was obtained by making a long and deep excavation on its right of way adjacent to the boundary of land owned by Mrs. May. This excavation extended to the property line between the right of way and the lands of Mrs. May on the hillside, and as a result of the excavation, which removed the support from Mrs. May's land, a large quantity of her land, containing some valuable trees, was caused to slip from its natural position.

To recover damages for the injuries sustained by the slipping of the ground, she brought this action against the company, and on a trial there was a verdict and judgment in her favor.

On this appeal the principal contention of the railroad company is that it had the right to remove, at such times and at such places as suited its convenience and interest, as much of the dirt on its right of way as it found necessary to the purposes for which the right of way was obtained. And it is argued that as there is no evidence that the slipping of Mrs. May's land was caused by any negligence on its part in making the excavation or by any act not reasonably necessary in the prosecution of its business, an action did not lie against it in behalf of Mrs. May, although her estate may have been injured by the making of the excavation and the removal of the lateral support that the ground on the right of way, in its natural state or before the excavation was made, afforded to her adjacent land on the hillside.

It has been settled by this court in numerous cases that "the owner of land adjacent to the lands of another has no right to remove the earth and thus withdraw the natural support of his neighbor's soil; and if he does he is liable for damages and may be restrained by injunction." And this liability attaches without reference to whether the removal of the lateral support was accompanied by acts of negligence or not: Oneil v. Har-

kins, 8 Bush, 650; City of Covington v. Geyler, 93 Ky., 275; L. & N. R. R. v. Bonhayo, 94 Ky., 67; Foley v. Wyeth, 2 Allen (Mass.), 131, 79 Am. Dec., 771; Schultz v. Bower, 57 Minn., 493, 47 Am. St. Rep., 630.

And, if this principle is applicable to the case we have, the decisions quoted, which are in harmony with the body of the law everywhere, would authorize the recovery in behalf of Mrs. May. It is said, however, that there is a well defined distinction between the rights and liabilities of adjacent land owners in respect to lateral support and the rights and liabilities of a railroad company and an adjacent proprietor concerning the uses to which the right of way of the railroad company may be put, and that the doctrine of lateral support applicable to ordinary adjacent land owners does not obtain between a railroad company and an adjacent proprietor. That a railroad company may remove the lateral support afforded by its right of way without subjecting itself to any liability although the removal may damage the adjoining owner.

In support of this proposition the case of Hortsman v. Cov. & Lex. R. R. Co., 18 B. Mon., 218, is relied on. In that case it appears that Hortsman granted to the railway company a right of way for the railroad to pass through his land, and in preparing the right of way for the use intended it was necessary to make a deep cut in the ground. The making of this cut caused the adjacent land of Hortsman to slip, and he brought suit against the company to recover damages for the injury to his estate. The question of the liability of the company was presented by a demurrer to the petition of Hortsman, and in holding that under the facts stated in the petition the company was not liable, the court said:

"The petition shows that the plaintiff had parted with the right of way for the railroad, and it must be assumed that he contemplated and assented to such use of the way as would render it practicable for the purposes for which it was intended. It does not appear, from any allegation in the petition, that the railroad company used or appropriated the way to any purpose not contemplated by the parties, nor that the company, in using the way for the track, dug the ditch or trench deeper or wider than was necessary, or went outside of the width granted for the way. * * *

"Now, although it devolved upon the company, in the use of the way for the purpose contemplated, to observe proper care and precaution so as to avoid unnecessary injury to plaintiff's property, and although a failure to do this would furnish a just ground of complaint for injury resulting from such failure, we are of opinion that it did not devolve upon the company to construct a wall or erect any defenses for the *protection* of the adjoining property from the consequences resulting from a proper and reasonable use of the way for the railroad, although such consequences would be injurious, and inevitably so, to the plaintiff. * * *

"It is obvious, from the petition here, that the plaintiff knew to what use the way would be applied; the presumption is that he estimated the damage that would necessarily result from the use of the way for the railroad track. The complaint is, not that it was not used for that purpose, or for a different one, but that the company failed to protect him, by walls or otherwise, from the falling in of his adjoining land. If the plaintiff desired to be protected from the injury, which he himself says was the inevitable result of the use of the way, without walls to prevent the caving in of the adjoining land, he should have stipulated for the erection of such walls. He parted with the right of way without such stipulation and the company then acquired the right to use the way for the purpose designed. It was not their duty to *protect* the plaintiff against consequences resulting inevitably or necessarily from such use, and such as might have been reasonably foreseen. All that the law required of them was to observe that care and precaution in the use of the way that would prevent unnecessary injury to the adjoining property. If the injury complained of was not the result of carelessness or negligence in the use of the way, but of the alleged failure to protect the plaintiff's property from consequences inevitable from the proper use of the way for the object contemplated, such injury furnished no ground of action."

It must be conceded that this case supports the contention of counsel for the railroad company, and if it is to be regarded as controlling authority, the railroad company cannot be held liable for removing the lateral support afforded by its right of way to the adjacent hillside land of Mrs. May. But we do not find ourselves

able to agree with counsel that the rights and liabilities of the parties to this suit are to be determined by the principle announced in this case.

It was decided many years before the adoption of the present Constitution, and under a Constitution that was not near so broad·in its protection of property rights as the present one. Section 242 of the present Constitution reads in part: "Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them."

Under this section no corporation or individual is permitted to either take, injure or destroy property without first making just compensation for the property so taken, injured or destroyed: City of Henderson v. McClain, 102 Ky., 402; Pickerill v. City of Louisville, 125 Ky., 213; Moore v. Lawrence County, 143 Ky., 448; Langhorne v. Turman, 141 Ky., 809.

If, therefore, the act of the railroad company in removing the lateral support afforded by the natural conformation of its right of way before the excavation was made, comes within the scope and meaning of this section, as we think it does, the company is liable for the resulting damages to the same extent as any other proprietor would be. So that if cases of this class were not governed before the present Constitution by the rules that controlled ordinary adjacent land owners, although there seems no good reason for holding that they should not be, the right of recovery may now well be put upon the ground that it is authorized by the section of the Constitution mentioned.

As illustrating the extent to which this constitutional provision may be relied on in affording protection to persons whose property is injured by public service corporations, and the broad meaning that has been given to it, reference may be made to the case of Illinois Central R. R. Co. v. Elliott, 129 Ky., 121. In that case Mrs. Elliott brought a suit against the railroad company to recover damages for injury to her property caused by the smoke and cinders thrown upon it by passing trains, and the court said:

"Where a railroad throws smoke and cinders upon the property of another, it is a trespass upon the property, and this is an injury to the property, for which, by

the express mandate of the Constitution, compensation must be made. * * * Under this provision, where private property is injured by a railroad corporation, it must make just compensation for the injury, and it cannot make any difference whether the railroad is upon a street in front of the property or elsewhere."

Again in Willis v. K. & I. Bridge Co., 104 Ky., 186, Willis sought to recover damages for injury to his property by passing trains, and the court said:

"The right of an abutting owner to recover damages of a railroad for throwing soot, cinders, etc., upon his property, does not arise from his interest in the street. * * * If it had been located on a lot adjoining that of Willis, which had been purchased from some one other than him, and the effect of the operation of the road had been the same as described in this case, a cause of action would have existed. When a railroad is constructed through a city by legislative authority, and it occupies the streets by municipal license, it is in the lawful exercise of a right. When it enters a city by legislative authority, and, by contract or condemnation, acquires the right to, and does, locate its road on private property, it is in the lawful exercise of a right. In either case, if, in the operation of the road, soot, cinders, etc., are thrown upon the property which abuts on the street, or upon property which abuts upon the private property acquired as indicated, and the owner is thus injured, he may maintain his action."

In Louisville & Nashville R. Co. v. Bonhayo, 94 Ky., 67, it appears from the opinion that "the dwelling and premises of the appellee, John Bonhayo, plaintiff below, were located on or near the railway of the appellant, and the latter, in widening its road, dug and excavated the ground so as to cause the soil to slide and take from his land its natural support, thereby causing the foundation of his dwelling to give way or move from its natural position. * * * The right of lateral support is an incident to the land, and one adjoining or near to has no right to so excavate and dig the soil as to deprive the land of his neighbor of this support. * * * It follows, therefore, that for an injury to the adjoining land by reason of an act by the defendant that deprives the land of its natural support damages may be recovered without showing negligence, on the idea that the right of property has been invaded."

Another instructive case on this subject is Langhorne v. Turman, 141 Ky., 809.

. It will be observed that the case we have affords equally as good, if not better, reasons for the application of the provisions of the section of the Constitution than were presented in either of the cases mentioned, because here there was in effect an actual, physical invasion of the property of Mrs. May, as by the removal of the lateral support a substantial injury was done to her land.

Nor do we find anything in the deed conveying the land to the railroad company that would exempt it from the operation of this section of the Constitution. There is nothing in this deed that indicates that it was in the contemplation of the parties that any additional land would be either taken, injured or destroyed, or that the railroad might, in the exercise of its business, use this right of way in such a manner as to inflict physical injury upon the property of the grantor in the deed or his successors in title.

Of course a person who conveys a right of way to a railroad company, and the company have the right to contract with reference to the damages that may result from the operation of trains, as well as the use to which the right of way may be put, and such a contract, if duly recorded would run with the land and be a protection to the railroad company against subsequent owners.

A similar protection from liability would be afforded if it were made to appear that in condemnation proceedings damages were assessed and recovered for this class of injuries. But in the deed made by Auxier to the railroad company it was not given the right directly or by implication to injure or take his adjacent property. Its rights were confined strictly to the strip of ground one hundred feet in width that it purchased, and this strip of ground it had and has the unquestioned privilege of using in any manner it pleases not incompatible with the duty it owes to the adjacent proprietors and its obligation under the Constitution not to take, injure or destroy property outside the limits of its right of way. In acquiring under these circumstances the right of way the railroad company was not absolved from the duty imposed upon an adjacent land owner as to lateral support. Under the present Constitution a railroad company in the use of its right of way occupies the same relation as

any other adjoining proprietor when the instrument under which it holds does not confer any larger rights than usually follows from the sale and purchase of land under ordinary deeds.

The views we have expressed, aside from the Kentucky cases cited, are supported by abundant authority, as may be seen by an examination of Elliott on Railroads, volume 2, section 1057b; Richardson v. Vermont Central R. R. Co., 25 Vt., 465, 60 Am. Dec., 283; Pettit v. Jamestown & Franklin R. R. Co., 222 Pa., 490, 21 L. R. A. (n. s.), 318; Mosier v. Oregon Navigation Co., 39 Or., 256, 87 Am. St. Rep., 652; Farnandis v. Great Northern Ry. Co., 41 Wash., 486, 5 L. R. A. (n. s.), 1086; Kansas City Northwestern R. R. Co. v. Schwake, 70 Kans., 141, 68 L. R. A., 673; McCullough v. St. Paul R. R. Co., 52 Minn., 12.

Wherefore, the judgment is affirmed.