## Smith, et al. v. Howard.

(Decided December 4, 1923.)

## Appeal from Whitley Circuit Court.

1.  Master and Servant—"Independent Contractor" and "Employee" Distinguished.—When one contracts to do a specific piece of work, furnishes his own assistants, and executes the work in accordance with a plan previously given him by the contractee, without being subject to the orders of the latter in respect to the details, he is an independent contractor, but whenever the employer retains the right, not only to direct what shall be done, but how it shall be done, then the relationship of master and servant exists.

2.  Master and Servant—Contractor Held Not Employee, though Owner Reserved Right to Make Alterations and Additions.—Plans and specifications for a building did not render contractor an employee by reason of the fact that they reserved to the contractee the right to make any alterations, additions, or omissions of the work or material specified he might find necessary during construction, though such right was exercised on several occasions.

3.  Adjoining Landowners—Right to Lateral Support of Land Supporting Building.—The right to lateral support for the soil in its natural condition is not lost by the mere placing of buildings upon the land where the structure is of such a character as not materially to increase the weight and pressure, or where the building, even though of a substantial character, did not in fact contribute to the injury.

4.  Adjoining Landowners—Whether Building Contributes to Giving Away of Land Question for Jury.—When the evidence authorizes the submission, the question whether the giving away of land was brought about by excavation removing the lateral support to the

soil in its natural state, or was contributed to by the increased weight and pressure of a building upon it to such extent that it would not otherwise have occurred, is one for the jury.

5. Master and Servant—Adjoining Landowner Liable for Removel of Lateral Support by Independent Contractor.—A lot owner employing an independent contractor to excavate is responsible to an adjoining landowner for the doing of the work as planned, unless he gives lawful notice of the proposed work, its proximity to the neighbor's property, and its extent and depth, to the end that the neighbor may take precautions to protect his property, but he is not liable for negligent manner of doing work by a competent and skillful independent contractor.

6. Adjoining Landowners—Knowledge of Excavation which will Render Notice of Excavation Unnecessary.—Knowledge on the part of adjoining lot owner as to excavation to be made, to be available as a defense in an action for damages occasioned by removal of lateral support, in the absence of notice, must have been such as a lawful notice would have imputed, and mere knowledge that the work was going on was not in itself sufficient in absence of knowledge of proximity of the excavation and its extent and depth.

7. Adjoining Landowners—Lot Owner Not Entitled to Recover for Removal of Lateral Support where Own Acts Contributed to Injury.—If plaintiff's construction of a building or his maintenance of a tile drain singly or together contributed to the collapse of the building to such an extent that it would not have otherwise occurred, then he cannot recover against defendant for removal of lateral support.

8. Adjoining Landowners—Damages Recoverable for Collapse of Building from Removal of Lateral Support.—Where a building collapses through the wrongful removal of lateral support the injured landowner is entitled to such damages as will compensate him for the cost of restoring his lot and building to substantially the same condition they were in immediately before the collapse, and also such damages as will compensate him for the loss of the use of his building and the lost rents and profits therefrom.

9. Adjoining Landowners—Extent of Recovery for Injury to Personal Property on Collapse of Building.—On collapse of building through removal of lateral support, the injured landowner is entitled to recover what represented at the time the fair reasonable market value of the furniture and other personal property destroyed by the falling of his building, and also the cost, if any, of restoring such furniture and other personal property injured and damaged, but not wholly destroyed, to its condition immediately before such injury.

TYE & SILER and R. L. POPE for appellants.

H. C. GILLIS, J. B. SNYDER and B. B. SNYDER for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming in part and reversing in part as to Kelsey and reversing as to Smith.

In 1919 appellee Howard was the owner of a lot on Depot street in Corbin, Ky., fronting 44 feet on that street. On it was a two-story brick building covering the whole of the frontage of the lot, except four inches on the north where it adjoined appellant Smith's lot. Smith owned a lot fronting 105 feet on Depot street adjoining that of appellee, and desiring to erect a three-story brick building on his lot entered into a contract with appellant, Kelsey, a builder and contractor, to erect the same according to certain plans and specifications theretofore made, the building to be erected on that part of Smith's lot immediately adjoining Howard's.

According to the plans and specifications originally drawn, the excavation for the Smith building was to be only four feet deep, and was to be made practically along the property line, which was only four inches from the building of appellee. Later, however, these plans were changed and the excavation was made five feet from the building of Howard, but was made to the depth of eight feet or more, so as to reach the solid rock.

The excavation began about the 1st of October, 1919, and continued intermittently until the 13th day of November, at which time the building of Howard gave way or collapsed for a part of the way adjoining the excavation.

This is an action by Howard against Smith, the owner, and Kelsey, the contractor, wherein damages are sought for the injury to his house and lot and to certain personal property therein, for the loss of rents, and for the value of certain material alleged to have fallen into the excavation and to have been thereafter appropriated by the defendants.

The petition alleged that Smith and Kelsey jointly conducted the operation, and proceeds upon the idea they were master and servant. It alleges they jointly, unskillfully, carelessly and negligently planned, executed, carried out and performed the work; and negligently failed to use reasonable or any care, means or precautions to avoid injury to plaintiff's property, and that the injury was the direct and proximate result of their said negligence In substance it is alleged that defendants planned

a basement under Smith's building about 25 feet by 47 feet and 8 feet in depth, that the basement was located only five feet north of plaintiff's north wall, and they excavated for that depth parallel with plaintiff's north wall; that the earth at that place was largely composed of sand and easily penetrated by water and liable to slip and crumble when wet, and that the excavation immediately filled with water from rains and percolations, it being in a low and swampy place. It is further alleged that the foundation under plaintiff's house, and the north wall thereof, was a concrete foundation extending about eighteen inches below the surface, and that shortly after the excavation on Smith's lot was started it filled with water, and defendants placed pumps therein and continuously thereafter until the fall of plaintiff's wall pumped water from the excavation and from the city water works, and discharged the same along and against plaintiff's north wall and near the rear end thereof, and caused and permitted the water to run along the whole length of the wall and upon the five feet of earth adjacent to plaintiff's wall for many weeks, whereby the water was caused to penetrate and permeate under the foundation of plaintiff's wall and throughout said five feet of earth until the collapse thereof on the 13th day of November.

The defendants, Smith and Kelsey, filed separate answers. They each denied the work was jointly done by them, and Smith affirmatively pleaded that Kelsey was an independent contractor and that he, Smith, neither had nor exercised any control whatsoever over the manner of doing the work.

Kelsey in the first paragraph of his answer denies the material allegations in the petition, and in the second paragraph affirmatively avers that the building of plaintiff on the adjoining lot was not constructed all at one time, but that the first story thereof was constructed about seven years before the second story, and that when the first story was erected it was not contemplated a second story would be built thereon; that the concrete foundation thereunder was only eighteen inches wide and did not extend exceeding twelve inches below the ground, and in effect that the same was insufficient for a two-story building, and that plaintiff, when he erected the second story knew or should have known that the foundation was insufficient to support the increased weight of a second story. He also alleged certain facts tending to show the

construction of the second story of the building was not in a substantial, workmanlike manner, because of certain alleged defects. He also alleges that for some time prior to the collapse of plaintiff's house, the plaintiff had erected and maintained on the lot a septic tank, and had permitted the water to flow therefrom continuously through earthen pipes along the north wall of his building and only about twelve inches therefrom; that the earthen pipe line had joints every two feet which were not cemented, and the water leaked and escaped from the pipe line at each of the joints and thereby saturated the ground along his north wall with water and by reason of which the foundation under plaintiff's building turned over toward the north and caused the wall to collapse, and that these facts were unknown to him, Kelsey, at the time.

In the third paragraph Kelsey alleges that at the time of the collapse plaintiff knew the facts alleged in the second paragraph and that he did not know them, and that the plaintiff could have at a moderate expense constructed three concrete piers along and adjacent to his foundation which would have furnished ample support and protection for his building and its foundation, and thereby prevented any damage, and that plaintiff had ample time to construct such piers after having the knowledge aforesaid, and that therefore the damage of which the plaintiff complains was the result of his own negligence.

The answer of Smith was in substance the same as Kelsey's, except that in a separate paragrpah he asserts that Kelsey was an independent contractor, and that he, Smith, had no control, direction or supervision over the manner of doing the work on the lot.

By reply the affirmative matter in the answers were put in issue, and in a separate paragraph the plaintiff affirmatively alleged that neither of the defendants notified or informed him of their intention or purpose to excavate or do the work planned, or told him of the plans or the manner of doing the same, in time to enable plaintiff to take precautions to protect his building; and that defendants, during the progress of the work up to within a few minutes before the collapse of his building, frequently represented and stated to plaintiff there was no danger to his building on account of the work, and that the earth left next to his foundation was sufficient to sup-

port the same and the building thereon, and it was not necessary for plaintiff to take any steps to protect his building, and that he relied upon such statements and representations.

In a rejoinder the defendants each denied the failure to notify or inform the plaintiff of the purpose or intention to excavate or do the work complained of, or of the plan or manner or time of doing the same; they also denied the representations or statements alleged to have been made to the plaintiff.

On the trial the jury, after hearing the evidence and having submitted to them numerous lengthy and somewhat complex instructions, returned a verdict for the plaintiff for $400.00 against Kelsey for certain material alleged to have been appropriated by him, and a verdict under two other instructions against each of the defendants for $2,675.00. The court having refused defendants a new trial, this appeal results.

Because there must be another trial of this case there will be no elaborate discussion of the evidence or the bearing which it has upon the several issues. For the purposes of this opinion it is sufficient to say that on all of the material issues there was evidence authorizing their submission to the jury, except upon the issue of independent contractor, and whether or not any notice was given by appellants, or either of them, to appellee of the contemplated excavation and its general nature.

The court in its instructions ignored the question of independent contractor entirely, and submitted the case throughout upon the theory that the relationship existing between Smith and Kelsey was that of master and servant, and that they were, therefore, jointly liable.

It is the rule in this state that when one contracts to do a specific piece of work, furnishes his own assistants, and executes the work in accordance with a plan previously given to him by the contractee, without being subject to the orders of the latter in respect to the details of the work, he is an independent contractor; but whenever the employer retains the right not only to direct what shall be done but how it shall be done, then the relationship of master and servant exists. L. & N. R. R. Co. v. Newland, 176 Ky. 166.

The uncontradicted evidence is that Smith caused to be made certain plans and specifications for the work and delivered same to Kelsey, and that he and Kelsey con-

tracted for the work in accordance with those plans and specifications; that Kelsey employed all hands, furnished all material, paid the hands and had absolute control over the details of the work and the manner of doing same, and that Smith neither had nor exercised any control whatsoever over the details of the work, but only during its progress looked to the doing of the same according to the specifications. Kelsey was to have control of the work and turn over the house when completed to Smith for a specific sum of money.

The plans and specifications in evidence, however, reserve to the owner the right to make any alterations, additions or omissions of the work or material he may find necessary during the construction, and that the contractor shall accede thereto; and as a matter of fact, during the progress of the work, Smith exercised this right upon more occasions than one. It is argued from this that Smith reserved such power and control over the construction as made the relationship that of master and servant.

Manifestly the argument is fallacious; what Smith reserved was not the authority to dictate or control the manner of doing the work, but the right to dictate and control what work should be done. The very definition given in the case of L. & N. R. R. Co. v. Newland, 176 Ky. 166, above referred to, pointedly makes this distinction.

It seems clear, therefore, that Kelsey was an independent contractor, and the court erred in not treating him as such in its instructions.

There was no evidence whatever that defendants, or either of them, had given plaintiff a formal notice with respect to the work, but there was much evidence tending to prove or disprove the nature of the knowledge which plaintiff had about the work, on the one hand to show such knowledge by him as would dispense with the necessity for notice, and on the other hand to show that he had no such knowledge as a lawful notice would have given to him.

The court, however, in its instructions, submitted the issue whether or not there was notice, although there was no evidence to authorize it, and confused "notice" and "knowledge" in such a way as that it might easily have been misleading to the jury.

The general rule is that the right to lateral support pertains only to the land in its natural condition, but does

not extend to such lands as are encumbered by buildings or structures which increase the lateral pressure, in the absence of a statute or the acquisition of the right by grant or prescription. 1 C. J., p. 1213; 1 R. C. L., p. 384; 1 Cyc., p. 776; note to Larson v. Metropolitan Street Railway Co., 33 A. S. R. 446.

But the application of that rule has been materially modified in this state. In the case of L. & N. R. R. Co. v. Bonhayo, 94 Ky. 67, the dwelling of the plaintiff was caused to give away and move from its natural position by an excavation causing the soil to slide and take from the plaintiff's land its natural support; and in that case this court approved an instruction which told the jury the plaintiff's land was entitled to this natural support, "And if deprived of it by the act of the defendant, the latter is liable, unless the plaintiff, or some one of the adjoining owners on the same hillside, had weakened or loosened the earth by digging, ditching or excavating for cellars, or by buildings had increased the down pressure, etc., and but for which the injury would not have happened, and in that event they must find for the defendant."

It will thus be seen that the question was there submitted to the jury whether there was such pressure caused by the building on the land, but for which the injury would not have taken place, or whether the lateral support of the soil in its natural condition had been removed by the act of the defendant. There can be no interpretation of that opinion except that in such cases it is proper to submit such question of fact to the jury.

The situation in the case at bar is not unlike that; there is evidence from which the jury might well have found either that the collapse of appellee's house would not have occurred except for the added pressure caused by the building erected thereon, or that it did occur independent of such added pressure because of the withdrawal of the latteral support from the soil of plaintiff's lot.

In the case of Langhorn v. Turman, 141 Ky. 809, another excavation case, this court approved the rule laid down in L. & N. R. R. Co. v. Bonhayo, in the following language:

"The rule in this state is that, where a landowner by digging on his own land has deprived the land of his neighbor of its natural support, he is, whether negligent

or not, liable in damages to his neighbor, not only for the actual injury to the soil, but for injuries to buildings.''

There is other high authority for the same rule. For instance, in 1 Cyc., p. 776, it is said: ''The right to lateral support for the soil in its natural state will not be lost, however, by the mere placing of structures upon the land, where the structure is of such a character as not materially to increase the weight and pressure, or where the building, even though of a substantial character, did not in fact contribute to the injury.'' Busby v. Holthaus, 46 Mo. 161; White v. Tebo, 43 N. Y. App. Div. 418, 60 N. Y. Suppl. 231; People v. Canal Board, 2 Thomps., etc. (N. Y.) 275; Brown v. Robbins, 4 H. & N. 186; Hunt v. Peake, Johns Ch. (Eng.) 705, 29 L. J. Ch. 785.

The application of the rule in this state is in accord with sound reason. The rule in most jurisdictions appears to be an arbitrary one which assumes the increased weight and pressure are the causes of the giving away of the support to which the soil in its natural condition is entitled, whereas our rule, when the evidence authorizes the submission of the question, leaves to the jury to determine whether such giving away was brought about by the excavation in removing the lateral support to the soil in its natural state, or was contributed to by the increased weight and pressure of the building to such extent it would not otherwise have occurred by reason of the excavation.

Nor may a lot owner who contemplates an excavation along the property line between him and his neighbor, or near thereto, avoid his responsibility for the result of such excavation by entering into a contract with a skillful and competent contractor to do the work. The property is his and he in the first place initiates the improvement, and his responsibility for the doing of the work as planned must continue. Robinson v. Webb, 11 Bush 464; Bonaparte v. Wiseman 44 L. R. A. (O. S.) 482; Thomas v. Harrington, 65 L. R. A. (O. S.) 742, and note; Williams v. Fresno Canal, etc. (96 Cal. 14), 31 Am. St. 172, and note; Hawver v. Whalen (Ohio), 14 L. R. A. (O. S.) 828; Southern Railway Co. v. Lewis, 165 (Ala. 555), 138 A. S. R. 77. The only way he may avoid such liability is by giving to his neighbor in time a lawful notice of the proposed work, its proximity to the neighbor's property, and its extent and depth, to the end that the neighbor may take precautions to protect his property

from the result of the proposed excavation. But where he enters into a contract with a competent and skillful contractor, and relinquishes control over the manner of doing the work, and the same is negligently or carelessly done by the contractor, then the owner is not liable for such negligence or carelessness.

It is conceded in this case that no notice was given, but defendants rely upon the knowledge the plaintiff had of the work. Manifestly such knowledge, to be available as a defense to defendants, must have been such as a lawful notice would have imputed to the plaintiff. The mere fact that he knew the work was going on was in itself insufficient; manifestly he must have known, also, not only the proximity of the excavation to his own property, and the extent thereof on the surface as proposed, but he must have known the depth, particularly along or near to his own property line, in order to determine the necessity for precautionary measures on his part. On its face a shallow excavation on an adjoining lot, near another's property line, would not involve the same danger to the lateral support to which his property in its natural condition is entitled, as would a much deeper excavation at the same point.

There were several errors and inaccuracies in the instructions which we have not deemed it necessary to point out; and in view of the complicated nature of the several defenses made, and the pleas in avoidance of same, we have deemed it proper to formulate instructions to be given on another trial, notwithstanding the great labor and care involved.

Those instructions are:

1. The plaintiff had the right to erect the building on his lot even up to the property line, and defendant Smith had the right to excavate on his lot even up to the property line; and the soil on Howard's lot in its natural condition was entitled to lateral support from the soil on Smith's lot, but not to such additional lateral support as would support the increased weight and pressure caused by the building on the Howard lot. Therefore, if you believe from the evidence as a direct and proximate result of the excavation on the Smith lot as finally planned, even though the work was carefully, skillfully and prudently done, the soil on Howard's lot was caused to fall away and be removed from its natural position, and would have fallen away and been so removed without the increased

weight and pressure caused by the building on the Howard lot, and as a direct and proximate cause of such falling away and removal, if any, the walls of plaintiff's house were thereby caused to fall, then you will find for plaintiff against each of defendants such sum as you may believe from the evidence will fairly compensate him in restoring his lot and building to their former condition; unless you believe the increased weight and pressure of the building on Howard's lot contributed to the giving away of the soil on his lot so that it would not have given away except for such increased weight and pressure, then there can be no finding against either defendant under this instruction, either for the injury to his land or building, unless you further believe as set forth in instruction No. 3.

2. If you believe from the evidence it was reasonably certain the contemplated excavation on the Smith lot as finally planned, would, even though the work was carefully, skillfully and prudently done, result in material injury to the property of Howard, and you believe from the evidence the injury to Howard's property was the direct and proximate result of doing the same as so planned, then you will find for the plaintiff against each of the defendants; unless you believe as set forth in instruction No. 3.

3. If you believe from the evidence plaintiff had knowledge of the excavation to be made, and of its proximity to his property, and the depth and extent thereof, in time to have taken precautions at a reasonable expense to secure or protect his property, and having such knowledge in such time, failed to take such precautions, then there can be no finding for plaintiff against either of defendants under instructions No. 1 or No. 2; unless you further believe from the evidence that defendants, or either of them, represented to or assured plaintiff that his property was in no danger from the excavation, or equivalent representations or assurances, and the plaintiff in reliance upon and because of such representations or assurances, if any, failed to take precautions to secure or protect his property, then his failure to take such precautions will not prevent his recovery under either instruction No. 1 or No. 2, as against such defendant or defendants, if either or both, who made such representations or assurances, if any.

4. You are instructed defendant Kelsey was an independent contractor, and there can be no recovery in this action against defendant Smith because of the negligence, if any, of Kelsey in the manner of doing the work. But you are instructed that although you may believe from the evidence that Howard had such knowledge of the excavation and the work as is set forth in instruction No. 3, notwithstanding such knowledge by him, it was the duty of Kelsey as contractor to execute the work in a careful, skillful and prudent manner, and if you believe from the evidence that Kelsey failed to execute said work in a careful, skillful or prudent manner, or failed to perform the same in a reasonably safe, skillful and prudent way, and as a direct and proximate result of such failure, if any, the soil under the plaintiff's foundation was removed and his house thereby caused to fall, then you will find for the plaintiff against the defendant Kelsey alone.

5. If you believe from the evidence that plaintiff in the construction of the brick building on his lot failed to erect thereunder a suitable and sufficient foundation therefor, considering the size and weight of the building and the nature of the ground upon which it was erected, or to balance the brick wall therein by placing same approximately in the center of the foundation, or to anchor a sufficient number of the timbers to the brick wall when he erected the second story on said building, or that he constructed a tile drain from his septic tank in such way as that the water escaped therefrom and went under and along the foundation of his building, and you should believe from the evidence that such failures, if any, on plaintiff's part or the maintaining by him, if he did, the tile drain, either singly or combined with each other, contributed to the collapse of plaintiff's building to such an extent it would not otherwise have occurred, then there should be no verdict against either defendant under any of the instructions.

6. If you find for plaintiff under either instructions No. 1 or No. 2, as modified by instruction No. 3, you will find against both defendants such sum in damages as you believe from the evidence will compensate him for the cost of restoring his lot and building to substantially the same contition they were in immediately before the collapse, less the $400.00 heretofore recovered from Kelsey, not to exceed the sum of $10,300.00 on these items; you may further find for the plaintiff such a sum in damages, if any,

as you may believe from the evidence represented at the time the fair reasonable market value of the beds, furniture and other personal property of Howard, if any, destroyed by the falling of his building, and also the cost, if any, of restoring such furniture and other personal property, if any, injured and damaged by the fall of said building, but not wholly destroyed, to its condition immediately before such injury, not to exceed $200.00 on this item; you may further find for plaintiff such sum in damages as you may believe from the evidence will compensate him for the loss of the use of his said building, if any, and the loss of the rents and profits therefrom of which he was deprived, if any, by reason of the injury thereto, if any, not to exceed $3,000.00 on this item. But if you find for the plaintiff against Kelsey under instruction No. 4, you will find none of these items against defendant Smith. If you find for plaintiff under either instruction No. 1 or No. 2, there should be no finding against Kelsey under instruction No. 4.

Instructions 7 and 8 given on the former trial will be again given, and the jury should be directed to indicate in the verdict, if they find for plaintiff, under what instruction or instructions the verdict is made.

The judgment against Kelsey for materials, etc., of Howard appropriated by Kelsey is not complained of and was proper.

The $400.00 judgment on the verdict against Kelsey, under the first instruction on the former trial, is affirmed; but the $2,675.00 judgment against each of defendants is reversed with directions to grant them a new trial, and for further proceedings consistent herewith.

Whole court sitting.