## Carr et al. v. Hanners et al.

(Decided February 4, 1930.)

JUDSON A. SHUEY for appellants.

YUNGBLUT, SCOTT & BENTON for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming in part and reversing in part.

The appellants became the owners of a house and lot in Campbell county known as lot No. 89 in the Woodlawn Home Company's subdivision. The property was purchased in 1919. They purchased the property from a building and loan association which acquired it in 1911. A house was on the property in 1911, but had not been completed. The building and loan association completed the house and rented the property until it was sold to appellants. This lot fronted on Burnett avenue, and the east line of the lot, about 185 feet in length, was the dividing line between the lot of appellants and lots Nos. 35, 36, 38, and 39. The appellee Jacob Hanners, and his son, Horace Hanners, purchased lots 37, 38, and 39 in 1924, and in May following they began an excavation on their lots. These lots were made up of a valley, or depression, running nearly through the center, and a steep hillside on each side of the valley. The house of appellants stood at the crest of the hill, and from the back of the house there was a sharp decline as the land fell away to the valley. The lots of appellees when purchased were covered with garbage, waste, and stunted

growth of shrubs. Appellees cleaned the lots off, and their excavation was for the purpose of removing dirt from the hillside into the valley so that the lots should be leveled up for building purposes.

We deem it unnecessary to attempt to follow in detail the work that was done by appellees, as it is sufficient to say that the excavations to some extent removed the lateral support of appellants' lot. Soon thereafter there was a slide and a subsidence. The back part of appellants' lot moved towards the valley, leaving a large crack, or cracks, in the lot of appellants, and resulting in the settling of the back of their lot. Appellants instituted their suit, alleging that the removing of the lateral support by appellees resulted in injury to the house, in that its rear end was cracked and the side thereof bulged, and that the injury was so great that the house had become dangerous to live in, and that the walls were so injured that they were liable to fall at any time, that certain pipes and the septic tank had been rendered useless, and that the removal of the lateral support and the failure to provide such support by appellees had resulted in great damage to the land and soil.

The issues were made up by the denial of the appellees, in their answer, that the excavating which they did on their lot caused any injury to the house, or lot, of appellants. The proof for the appellants established that their house and lot had been greatly damaged, while the proof for appellees tended to establish that the damage to the house was caused before the excavating was done, and that the reason for the damage to the house was because of its erection on a foundation that had been filled in, and that the concrete blocks used as a foundation for the house had not been placed on solid support. There was proof that appellees shored up one corner of the house at the request of appellants, and they attempted to stop the slide by driving tiling, or lumber, into the ground at the toe of the slide. After these tilings were driven, there was a second slide that pushed them over. There is no dispute about there having been slides tending to carry the earth down the hill, but it was strongly combated in the proof that these slides caused injury to the house of appellants. It is a case where the plaintiffs established their case abundantly by their evidence, and the defendants established their defense abundantly by the evidence. In such cases the jury is the proper tribunal to determine the correct-

ness of the positions assumed by the litigants. The jury returned a verdict reciting that the removing of the lateral support did not cause the injury to the house, but it returned a verdict for $50 as the amount of damages caused to the lot. The court had limited the amount of damages which might be recovered for injuries to the lot to that sum. Appellees, being dissatisfied with the verdict, have appealed.

The first argument for the reversal is that the attorney for appellees was guilty of misconduct in his argument to the jury. The statement by the attorney related to an effort on the part of the building and loan association to have the property repaired while it belonged to it. There was some evidence tending to show that there had been efforts to repair, or make secure, the property, and this argument was not improper, although it may be that the evidence did not support the exact language used by the attorney. There was nothing in the statement improper or prejudicial.

It is next insisted that the verdict is contrary to the evidence because it recited that the jury found that the house was not injured, and at the same time found that the lot was injured. There was nothing improper in the form of the verdict in this respect. The excavation may have resulted in damage to the lot without resulting in damage to the house, and that is what the jury found. The evidence was conflicting as to whether the house was damaged, but there was no serious controversy over the question of whether there was some damage at least to the lot.

There is complaint about the admission of evidence. This complaint is directed at the introduction of the record of a suit filed by the building and loan association against William Jordon, who, at one time, owned the lot of appellees. We can see no useful purpose served by the introduction of the record, but certainly it could not have been prejudicial to appellants. The court held that it was competent, as it identified the property and the parties to the suit. The most that can be said about that evidence is that it was wholly irrelevant, and neither hurt nor helped any one.

Complaint is directed at the instructions given, but the two first instructions relating to damages occasioned to the house by reason of the excavation closely followed the instructions in the case of Smith v. Howard, 201 Ky. 249, 256 S. W. 402. The principles controlling in cases

such as this were fully discussed in that opinion, and we see no reason to depart from what was decided there. But it is insisted by counsel for appellants that the court departed from the principles announced in that case and in the case of Louisville & N. R. R. Co. v. Bonhayo, 94 Ky. 67, 21 S. W. 526, 14 Ky. Law Rep. 737. This argument is made on the ground that the court gave instructions A, B, and C offered by appellees. Instruction A allowed a separate finding of damages to the house and to the lot. Under the evidence we are unwilling to say that the court committed error in thus allowing a separate finding of damages.

It is complained that the court erred in limiting the amount of recovery for damages to the lot to the sum of $50. That complaint is meritorious. One of the witnesses testifying for appellants was asked what damage, if any, was done to the lot, and he replied that he made an estimate that it would cost around $50 to shape and level the lot up. It is argued that the evidence was incompetent, and for that reason there was no evidence before the jury on which it could base a verdict of $50, and that the court should not have limited the amount of recovery for damages to the lot to $50. The leveling of the lot may have been done for $50, as stated by the witness, but there was evidence that the back end of the lot was continuously slipping, and it may be necessary to build a retaining wall. There was evidence that the septic tank had been damaged and the pipes. There was further evidence that large cracks had come in the back of the lot after the excavating was done, and all of these things may have happened, as was found by the jury, without any damage to the house. The measure of damages should have been stated in instruction A the same as in instruction No. 2 given by the court, except that damages to the house should have been eliminated. Where the evidence discloses the nature of the injury, it is for the jury to determine the amount of the damages. The court would not be authorized to limit the amount of the recovery to a sum less than the amount claimed in the petition, unless the plaintiffs had shown, by their evidence, that the damage could have been no greater than a certain sum.

Instruction B given by the court was unnecessary, as the same idea is embraced in the other instructions. We see no objection to instruction C, as it embodies clearly the defense relied upon by appellees.

There are no grounds for disturbing the verdict of the jury finding that there was no damage to the house, but the error of the court limiting the recovery for damages to the lot to $50 necessitates a reversal on this branch of the case. If it had not been that appellees offered instruction A and cannot, therefore, complain about it, it may have been that the allegations of the petition would not have authorized submitting an issue as to damages to the lot separate and apart from the damages to the house.

In so far as it was adjudged that there were no damages to the house, the judgment must be affirmed, but the judgment as to the damages to the lot must be reversed and remanded for a new trial consistent with this opinion.

Judgment affirmed in part, and reversed in part, and remanded for proceedings consistent with this opinion; each party will pay half the cost on this appeal.