## Spoo et al. v. Garvin.

(Decided November 18, 1930.)

114

LAWRENCE S. LEOPOLD and FRANK J. DOUGHERTY for appellant.

BRUCE & BULLITT, LEO T. WOLFORD, GORDON & LAURENT and SQUIRE R. OGDEN for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The parties to this appeal are adjoining lot owners, and the controversy concerns cross-claims for alleged injuries to the respective lots.

Katherine Garvin instituted the action to recover damages and to obtain a permanent injunction to compel Spoo to grade his lot, or to take proper steps to prevent the washing of mud upon plaintiff's lot.

It was alleged that the defendant's property was higher than that of plaintiff, resulting in surface water flowing upon the lower ground; that Spoo had changed the surface of his lot, and piled along and near the division line loose dirt which the water carried upon plaintiff's lawn, thereby inflicting great damage upon the lower lot.

Spoo denied the allegations of the petition, and in several separate paragraphs set up a counterclaim for damages and for an injunction in his favor. The substance of his counterclaim was that the plaintiff, or her predecessor in title, had excavated her lot so close to his that it left a perpendicular embankment of exposed earth, which crumbled and fell in, and enabled plaintiff to take his soil to grade her lot. He claimed it would cost $250 to correct the condition, and in one paragraph he sought to recover that sum. He sought also to compel the plaintiff to restore the natural condition of her lot by

affording lateral support at the points where it had been removed. Defendant further alleged that the work done by plaintiff on her lot had brought about the damages complained of in the petition, which could be remedied at a cost of $400 or less, either by terracing on her land up to the dividing line, or by erecting a retaining wall. A large amount of testimony was taken.

The chancellor found that the plaintiff's damage resulted from a washout that occurred in January, 1927, and from the constant crumbling of the bank on the division line. As to the first matter, doubt was entertained whether it resulted from defendant's sole fault or was contributed to by the plaintiff's act in maintaining her lawn on an artificial level. In any event, such damage was nominal, and no specific proof respecting it was offered. The condition had been corrected, and no injunctive relief was needed. The continual crumbling was caused by the excavation upon plaintiff's lot, and she could not, on that account, have relief against defendant.

Respecting the counterclaim, the chancellor held that the plaintiff was not liable to defendant for any damage done by her predecessor in title, and that she was free from responsibility to the defendant for her own acts prior to the time he acquired his lot. In the view taken by the court, neither party was entitled to relief, except that defendant was allowed $10 nominal damages for defendant's soil appropriated and applied to the filling and grading of her lot. The defendant has prosecuted an appeal, and the plaintiff has taken a cross-appeal.

It appears from the pleadings and proof that the Garvin lot was lower than the Spoo lot, and in the natural condition the surface water from the higher ground ran upon and over the lower lot. Mrs. Garvin acquired her property on September 16, 1923, and has since resided there. At that time the Spoo lot was vacant, and no trouble was encountered. In leveling the Garvin lot, the former owners had excavated some depth on the side next to the Spoo lot and filled on the opposite side. This change made an abrupt and exposed embankment along the division line of the lots. As a natural result of rains and freezing, the dirt crumbled and fell upon the Garvin lot. After Mrs. Garvin became the owner, she

caused the dirt that fell upon her side of the line to be removed and placed on another portion of her yard. Early in 1925 Mr. Spoo acquired his lot, and during that year he made large cuts and excavations upon it. He piled a ridge of dirt along the line of division between the two lots. Later he built a house and filled in around it. During a rainy spell early in 1927, the water overflowed from Spoo's lot and broke through the embankment, doing some considerable damage.

In October, 1927, Spoo sold his lot to McDonald, so that we are concerned only with the rights of the parties during the period they were neighbors.

The owners of land have a right to use it in accordance with their own tastes and wishes, provided they do not inflict any injury upon the lands of others.

If an adjacent owner removes the lateral support from improved property, he should notify his neighbor in time to enable the latter to protect his property from subsidence or slides. Lapp v. Gutenkunst, 44 S. W. 964, 19 Ky. Law Rep. 1950; Krish v. Ford, 43 S. W. 237, 19 Ky. Law Rep. 1167.

But, if the land remains in its natural state, neither owner has any right to remove the lateral support of the soil of his neighbor. 1 C. J. p. 1212; Chesapeake & O. Ry. Co. v. May, 157 Ky. 708, 163 S. W. 1112; Oneil v. Harkins, 8 Bush 652; Smith v. Howard, 201 Ky. 249, 256 S. W. 402; Carr v. Hanners, 232 Ky. 670, 24 S. W. (2d) 570.

But, in this case, the natural conditions had been completely altered, and the rights of the parties must be determined by equitable principles, and not by those rules of the common law.

We deduce from the record that the excavation made by the vendors of Mrs. Garvin was the probable cause of the crumbling of the soil left without natural support. But Mrs. Garvin was not liable for the condition or consequences resulting from the acts of the former owners. Nor can the appellant complain thereof in any event because he acquired his lot after that excavation had been made. But, in maintaining the condition which she found, it was the duty of Mrs. Garvin to refrain from injuring her neighbor. As the soil crumbled and fell upon her lot, she had the right to remove it, but, if she

appropriated to her own use any material belonging to Spoo, she was liable for its value. Langhorne v. Turman, 141 Ky. 809, 133 S. W. 1008, 34 L. R. A. (N. S.) 211.

There is evidence that some of the soil from Spoo's lot did fall upon the land of Mrs. Garvin, and that it was used in grading and filling her lot. But the approximate quantity and probable value thereof were not proven with sufficient definiteness to warrant a judgment for more than nominal damages. Plainly, it was the duty of these neighbors, when they found the conditions of which they complain, to have the land at the division line graded or terraced so as to avoid damage to either.

It is equally plain that Mr. Spoo knew that the drainage from his lot would fall upon the Garvin lawn, and, when he made his improvements, it was his duty to guard against loose mud and clay being carried from his premises upon those of his neighbor. He says that the ridge of dirt was formed along the line partly, at least, for such purpose, but it was not calculated to accomplish that end. On the contrary, it was likely to cause loose soil to wash upon the Garvin property. Some damage undoubtedly was thus inflicted upon the Garvin land, but the proof respecting it is so indefinite that the chancellor was unable to form any judgment about it. The parties obviously were seeking injunctive relief, and did not assemble the evidence with particular reference to each item of injury or damage.

No injunctive relief was necessary at the time the case was disposed of, and for that reason the chancellor dismissed the action. Subsequently, however, he ordered a judgment against Mrs. Garvin in favor of Mr. Spoo for $10 nominal damages, and the costs of the action. We are not convinced that any error was committed by the court in terminating the case in that manner.

What has been said disposes of all questions presented by the appeal and the cross-appeal, and illustrates that neither party has any just ground to complain of the decree.

The judgment is affirmed on the appeal and cross-appeal.