FRANK PRETE *et al. vs.* CLARENCE E. CRAY, C. T.

APRIL 25, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

SWEETLAND, C. J. This is an action of trespass on the case brought against the defendant as city treasurer of the city of Providence to recover damages for injury to the plaintiffs' property alleged to have been caused by the action of the city in making an excavation in front of the plaintiffs' land on Branch avenue in Providence for the purpose of repairing a public sewer.

The case was tried before a justice of the Superior Court sitting with a jury. The trial resulted in a verdict for the plaintiffs in the sum of $2,020.83. The defendant duly filed a motion for new trial which was denied by the justice. The defendant has brought the case before us upon exception to the decision of the justice on the motion for new trial and upon certain other exceptions of the defendant taken to rulings of the justice made in the course of the trial.

The declaration is in two counts. The first count alleges a breach on the part of the city of its duty to so conduct its work and support the sides of said excavation as not to disturb or remove the lateral support of the plaintiffs' adjoining property. The second count alleges negligence on the part of the city and its agents in making the excavation and performing the work of repairing the sewer causing injury to the plaintiffs' property.

At the conclusion of the evidence the justice ruled that the plaintiffs had entirely failed to show negligence on the part of the city and withdrew the second count from the consideration of the jury. To this ruling the plaintiffs. excepted but as the verdict was in their favor they have not brought the exception here and the question of whether the evidence tended to establish negligence in the city is not before us.

The defendant is now insisting upon his exceptions to the ruling of the justice denying the motion to direct a verdict for the defendant and to the refusal of the justice to instruct

the jury in accordance with the defendant's three requests to charge. Each of these four exceptions is based upon the defendant's contention that in performing the work in question the city was exercising a governmental function and hence, in the absence of statutory provision imposing such liability, it is not liable for injury to the plaintiffs' property caused by the disturbance or the removal of the lateral support of the plaintiffs' land.

By a series of statutes Providence has been given authority to construct public sewers in the city streets and to make assessments for the cost thereof on the adjacent land. No duty to so construct sewers, however, has been imposed upon the city. It must be held that in availing itself of the privilege thus granted the city was not exercising a governmental function delegated to it by the State, but was voluntarily acting for its own advantage in its corporate capacity as a municipality. Upon this ground these exceptions should be overruled. Upon the application of a broader principle recognized by this court, however, the defendant would be liable under the allegations of the first count of the declaration which were amply supported by the plaintiffs' evidence. When the city of Providence in the exercise of the power given to it to make excavations in the city streets for the purpose of constructing or repairing sewers, goes beyond the lines of the street and invades private property, even if the invasion is only consequential, it stands in no different position from a private individual who invades the property of another individual. Under our decisions an owner's property is invaded when its beneficial use is impaired in the manner alleged in the first count of the declaration as well as when such owner is directly and formally excluded from its enjoyment. *Inman* v. *Tripp*, 11 R. I. 520; *O'Donnell* v. *White*, 23 R. I. 318.

In his general charge the justice instructed the jury as follows: "If sand or soil of the plaintiffs' land ran into the trench because of the digging operation the plaintiffs have been deprived of lateral support and are entitled to damages regardless of whether there is negligence or not." To this

instruction the defendant has excepted and has relied upon that exception before us. The portion of the charge to which exception was taken appears by the transcript to have been part of a sentence, the remainder of which is "if they did so act that because . . . they took away the lateral support of the land of the plaintiff then the plaintiff is entitled to damages." This instruction is not objectionable as constituting an erroneous statement of the law. It is contended, however, that, as the plaintiffs' claim of damage included damages to buildings upon their land as well as to the land itself, the charge was insufficient and misleading in that it failed to instruct the jury fully as to the measure of damages applicable in the circumstances of this case. If not satisfied with the charge in this regard the defendant should have asked for specific instructions and failing so to request the justice the defendant can not raise the objection here. *Warner Sugar Refining Co.* v. *Metropolitan Grocery Co.*, 46 R. I. 158; *Langley* v. *Woolworth Co.*, 47 R. I. 165; *Cassidy* v. *McDonald*, 47 R. I. 147. In the consideration of this exception, however, questions have arisen which make it desirable to consider the nature of, and the limitations upon the right of so-called lateral support between lands of adjoining owners, and also as to what is the measure of damages in case of an interference with that right. At the outset we hold that in this State if in the exercise of a privilege to construct or repair a sewer in a public street a municipality makes excavations therein it is subject to the same duty not to interfere with the lateral support of land abutting on the street that the law imposes upon adjoining landowners. Between adjacent landowners the general principle in this regard is that each has an absolute property right to have his land laterally supported by the soil of his neighbor and if either in excavating on his own premises so disturbs the lateral support of his neighbor's land as to cause it, in its natural state, by the pressure of its own weight, to fall away or slide from its position the one so excavating is liable. This right of lateral support applies only to the land of the adjacent owner and does not include

the right to have the weight of the building placed upon the land also supported. And when, upon an excavation made on his own land by an adjoining landowner, a building upon the adjacent land by its weight and pressure causes the building itself and the land upon which it stands to sink, then in the absence of negligence the one making the excavation is not liable for injury to the building resulting from its subsidence.

A condition sometimes arises where as the result of an excavation made on his own land by one adjoining landowner there is a disturbance of the lateral support to his neighbor's land due solely to the weight of the neighbor's land itself in its natural condition, and there has also been injury to a building on such neighbor's land resulting from the subsidence of the land, which subsidence cannot be ascribed in any degree to the pressure of the building upon the land.

In such circumstances some courts have applied the general rule as to damages and have held that, in the absence of negligence on his part, the landowner making the excavation is not liable for damages arising from injury to the building of his neighbor. A line of authority, however, has been developed which has regarded the condition we have named as calling for a qualification of the general rule, and it has been held by a number of courts that a landowner by building upon his land has not thereby lost his right to have his soil supported, and when that right is invaded by his neighbor and his land sinks he is entitled to compensation for the direct results of such breach of duty including any injury to buildings upon his land, when such injury is due to an interference with the lateral support of the soil, and cannot be ascribed to the weight and pressure of the buildings upon the land. Such is the rule enunciated in the English cases. *Hunt* v. *Peake*, 29 L. J. Eq. 785; *Brown* v. *Robins*, 4 H. & N. 186; *Stroyan* v. *Knowles*, 6 H. & N. 454. Upon this question there is a distinction in principle between liability and damage which appears to have been overlooked in cases holding contra to what we may call the English rule. This distinction may be stated as follows: there is

no legal duty in the landowner A to furnish lateral support for the building of his neighbor B, and if without negligence on A's part B's soil falls away solely by reason of A's excavation on his own land and due in no respect to the weight of B's building, yet B's building is injured due to the subsidence of the soil under it, nevertheless, under the general rule A has committed no actionable wrong in respect to the injury to B's building, he has, however, committed an actionable wrong with respect to B's land, and under the general legal principle that a wrongdoer must make compensation in damages for all the direct results of his wrongdoing, B is entitled to recover compensation for the injury to his building solely because it is a part of his damage for the actionable wrong which A has committed. In the English case of *Attorney-General ex rel* v. *Conduit Colliery Co.* (1895), 1 Q. B. 301 at 312, COLLINS, J. has commented upon this distinction, as follows: "That such is the true principle,— that is, that it is the subsidence and not the pecuniary loss which grounds the cause of action—is, I think, apparent from those decisions which establish that, on proof that the weight of a newly-erected house has not contributed to the subsidence, its value may be recovered by way of damage consequent on the original injury in an action against the adjoining owner who has withdrawn the support of the adjacent land; *Brown* v. *Robins*, 4 H. & N. 186; *Hamer* v. *Knowles*, 6 H. & N. 454. In these cases the fall of the house itself could give no cause of action, for there was no right to have it supported; therefore an injuria giving a right of action had to be shown before the consequential damage by reason of the falling of the house could be claimed; and such an injuria was shown on proof that the unincumbered soil would have subsided, although no pecuniary damage, even to the extent of a farthing, was suggested or proved had not the house been there." A number of American decisions are in harmony with the principle just set forth. *Stearns* v. *Richmond*, 88 Va. 992; *Farnandis* v. *Great Northern R. Co.*, 41 Wash. 486; *Busby* v. *Holthaus*, 46 Mo. 161; *Riley* v. *Continuous Rail Joint Co.*, 110 App. Div. 787,

confirmed in 193 N. Y. 643; *Louisville & Nashville R. R. Co.* v. *Bonhayo*, 94 Ky. 67; *Langhorne* v. *Turman*, 141 Ky. 809. We approve the decisions in those cases as being sounder in principle and as placing upon one who commits a breach of duty full responsibility for his wrongful act. In *Gobeille* v. *Meunier*, 21 R. I. 103, this court has approved the general principle that if an adjoining landowner removes the lateral support of his neighbor's land, whereby the soil of that neighbor "is disturbed or falls away, he is legally liable for all damages so occasioned." The facts are not fully set out in the opinion. By reference to the papers in that case, it appears that the complaint is partly based upon the destruction of a fence alleged to belong to the complainant and the final decree requires the respondent to "restore said premises to the condition in which they were before he began to excavate the same." The issues of fact filed in the papers indicate that there was more before the court, and more comprehended in the language of the decision quoted above than merely the damage to the complainant's soil.

In a number of decisions, in which the facts before the court would not bring the case then at bar within the qualification of the general rule which we have approved, courts have impliedly recognized that qualification. Thus in *Booth* v. *The Rome, &c. R. R. Co.*, 140 N. Y. 267, the court said, "if one by excavating on his own land . . . . . causes a building on his neighbor's land to topple over, there is no remedy, provided the weight of the building caused the land on which it stood to give way.". In *Beard* v. *Murphy*, 37 Vt. 99, the court said: · "the owner of land is not entitled to claim the support of the adjoining soil for any artificial structure he may erect upon his land, which increases the lateral pressure."

The undisputed evidence brings this case upon its facts clearly within the condition we have been considering above. The plaintiffs' land abutted on Branch avenue. On the plaintiffs' lot were their dwelling house and a small building near the street line used as a photograph studio. The ditch

excavated by the City was near the sidewalk on the plaintiffs' side of the avenue. The ditch was ten or twelve feet wide and extended to a depth of about forty feet. Both sides of the trench were supported by tongued and grooved 4-inch plank sheathing. As the work progressed, these planks were being constantly driven down by a heavy steam hammer. At a depth of thirty-eight or forty feet, a bed of quicksand was reached which extended from the ditch into the adjacent soil of the plaintiffs. This quicksand, according to the testimony of the defendant's contractor and engineer, was composed of very fine sand and flowed somewhat like water. The defendant's plank sheathing was not driven through this bed of quicksand, and as the quicksand was removed from the ditch by the defendant, other quicksand from the direction of the plaintiffs' land bubbled up from under the bottom of the plank sheathing. As the process proceeded of removing the quicksand from the ditch as fast as it flowed in from the defendant's premises, it resulted in impairing the lateral support of the plaintiffs' land, and also by drawing out the stratum of quicksand from under the plaintiffs' property, the plaintiffs' land was undermined and the subjacent support afforded by the bed of quicksand was destroyed. The effect of this loss of support was intensified by the constant blows of the heavy steam hammer. According to the testimony of the defendant's engineer the blows of the hammer caused vibration in the soil, which vibration traveled farther due to the character of the soil with the solid surface and the bed of quicksand underneath. It was admitted by the defendant's engineer that there was a settlement of the soil from the curb of the sidewalk back to the foundation of the plaintiffs' house and that the settlement was due to the escape of the quicksand from under the land and the vibration caused by the steam hammer. That the subsidence of the soil was not due to the weight of the plaintiffs' buildings is clearly apparent. The land sank at the curb, and the sidewalk and a part of the plaintiffs' lot slid forward from the front foundation of the plaintiffs' house, where the subsidence was about six

inches, down to the curb of the sidewalk where the subsidence was from twelve to eighteen inches. The foundation of the plaintiffs' house on the rear and the sides was not disturbed. As a result of the sliding of the soil the foundation of the plaintiffs' house in front cracked and fell forward from the rest of the house foundation, leaving the front sill of the house unsupported. The sagging of the front sill, deprived of the support of the foundation, caused in great part the injury to the house, rendering the doors and windows unserviceable, and cracking the plastering and the ceilings of the front rooms of the house so that they had to be removed. A like condition is apparent with reference to the injury to the small photograph studio of the plaintiffs. From these facts it is plain that the weight of the plaintiffs' building was in no degree responsible for the subsidence of the plaintiffs' soil.

There is another ground upon which the plaintiffs, in a proper form of action, clearly would be entitled to recover, which we need not consider at length. By drawing off the subjacent support of the plaintiffs' land the city was undermining and invading the plaintiffs' premises. For this the city was liable, and would be required to compensate the plaintiffs, as well for the damage to their buildings as for the damage to their soil, whether the city was negligent or not in making the excavation.

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court for the entry of judgment for the plaintiff upon the verdict.

RATHBUN, J., dissenting. I am unable to concur in the conclusion reached by my associates that one who uses all reasonable care in excavating upon his own land is liable to an adjoining owner for damage to his buildings due to settling caused by such excavating, provided the land in the absence of the weight of the buildings thereon would have settled.

I agree that if a city makes excavations in a public street for the repair of a public sewer and by so doing disturbs the

lateral support of an adjoining owner, the city is liable whenever the same acts would be ground for liability against an individual who, in excavating on his own land, disturbs the lateral support of an adjoining owner.

In making excavations one owes an absolute duty to furnish lateral support to the adjoining land so that it will not by its own weight settle or slide into the excavation. A showing that the excavations were made with reasonable care is no defense in an action for damages to the adjoining land. On the other hand, the law is well settled that one owes no absolute duty to provide lateral support sufficient to maintain the extra weight of the buildings on the adjoining land. There is, however, liability for damage caused to such buildings by excavations in a negligent manner. Both rules are reasonable. If both parcels of land are without improvements both owners stand on an equal footing. If either makes excavations he is liable regardless of negligence for damage caused to the adjoining land.— If the land is unimproved, the damage in the absence of negligence would ordinarily be comparatively slight.—But, if he exercises reasonable care to prevent the adjoining land and buildings from settling, should he not be permitted to improve his land without being liable for damage to the buildings? If he can not do so he is practically prevented in many instances from improving his land after the adjoining owner has erected valuable buildings without adequate foundations. In the case before us the soil of both parties rested upon quicksand which flowed almost as freely as water. The evidence shows that the defendant in making the excavation took every known precaution to prevent the quicksand from escaping from beneath the plaintiffs' soil into the trench. The plaintiffs neither alleged nor proved negligence in permitting the quicksand beneath the plaintiffs' soil from escaping into the excavation. However, the majority opinion holds that the defendant is liable for all damage to the plaintiffs' buildings because, as that opinion assumes,—and not unreasonably—the plaintiffs' land would have settled to some extent had no buildings rested upon

the land. The reasoning adopted is that the defendant, being liable regardless of negligence for the slight damage done to the land by causing it to settle, must be liable also for the damage caused to the buildings. *Bissell* v. *Ford*, 176 Mich. 64 (decided in 1913) contains, at page 69, the following clear and comprehensive statement relative to the rights and obligations of adjacent landowners when excavations are made: "(1) While a landowner has the undoubted right to excavate close to the boundary line, he must take reasonable precautions to prevent his neighbor's soil from falling. (2) If he has taken such reasonable precautions, and yet the soil falls from its own pressure, he is still liable for injury to the land, but not for any injury to the superstructure. (3) If the pressure of the superstructure causes the land to fall, he is not liable either for injury to the land or superstructure. (4) If he fails to take such reasonable precautions to protect his neighbor's soil, and to preserve it in its natural state, he is liable for the injury to both the land and the superstructure, if the pressure of the superstructure did not cause the land to fall, and it fell in consequence of the failure to take such reasonable precautions."

A considerable amount of soil in many sections rests upon quicksand. In a closely built-up section it is practically impossible for an owner of a parcel of such land, in excavating for building purposes, to prevent the adjoining land from settling to some extent.—The damage is usually negligible in the absence of improvements.—But if valuable improvements had been made upon the adjoining land such owner · must, according to the rule enunciated by the majority opinion, either refrain from improving his own land or be liable for damage, which he could not avoid, to such improvements.

I assume that my associates would deny that the adjoining owner, by improving his land, acquired an easement in the adjoining land in favor of such improvements, but such is the result of the opinion.

The rule supported · by reason and the clear weight of authority is stated in 1 C. J., at 1216, as follows: "An

owner of land adjoining land upon which there are buildings or other structures may lawfully excavate on his own land and to the line, although he endangers such structures and erections, and, in the absence of negligence or statutory provisions on the subject or of a contractual or prescriptive right of lateral support, he will not be liable for the injury sustained by the adjoining owner, as to the buildings or structures; or in other words he will be liable for no greater loss than would have resulted had there been no building on the land, provided the excavation was not made with an improper motive." The text is supported by an abundance of authority.

The majority opinion cites *Gobeille* v. *Meunier*, 21 R. I. 103, to support the contention that the plaintiffs are entitled to recover for damage to their buildings regardless of whether the defendant was negligent. The opinion contains the following sentence: "The law is well settled that the owner of land is entitled to have it supported and protected in its natural condition by the land of his adjoining proprietor, and that if such adjoining owner removes such natural support, whereby the soil of the former is disturbed or falls away, he is legally liable for all damage so occasioned." Particular emphasis is placed upon the words "he is legally liable for all damage so occasioned." The court was speaking of land "in its natural condition", *i. e.*, land without buildings, and not of land with buildings thereon or land generally. Hence, the language states no rule for damages for injuries to buildings. The court cited *Beard* v. *Murphy*, 37 Vt. 99; *Graves* v. *Mattison*, 67 Vt. 630; *McMaugh* v. *Burke*, 12 R. I. 499 and 2 Wash. R. P. 333. No one of the authorities cited by the court supports the plaintiffs' contention, but on the contrary each, except *McMaugh* v. *Burke*—which has no bearing whatever upon the point—sustains the general rule above stated.

Said opinion refers to the original papers in the *Gobeille* case and calls attention to the fact that the final decree directed the respondent to replace the line fence which he had removed. In that case the question was not even

raised—much less decided—whether the respondent would have been liable for damage to the fence had it slipped into the excavation while he was excavating with due care on his own land. The papers in the case clearly show not only that the fence did not slip or settle as the result of the respondent's excavations on his own land but also that the respondent deliberately removed the fence and excavated the complainant's land with the intention of erecting a retaining wall partly upon said land instead of entirely upon his own. It also appears from the reported opinion that respondent excavated on complainant's land. In removing the fence and making excavations on the complainant's land the respondent was a trespasser and was, of course, liable for all damage caused by the trespass, including damage for removing the fence.

The majority opinion contains the following statements: "When the city of Providence in the exercise of the power given to it to make excavations in the city streets for the purpose of constructing or repairing sewers, goes beyond the lines of the street and invades private property, even if the invasion is only consequential, it stands in no different position from a private individual who invades the property of another individual. Under our decisions an owner's property is invaded when its beneficial use is impaired in the manner alleged in the first count of the declaration as well as when such owner is directly and formally excluded from its enjoyment. *Inman* v. *Tripp*, 11 R. I. 520; *O'Donnell* v. *White*, 23 R. I. 318."

I agree that the city is liable if it "goes beyond the lines of the street and invades private property", but the city did not go "beyond the lines of the street." Did the city invade private property by failing to prevent the quicksand beneath the plaintiffs' soil from running into the excavation in the street? Neither of the cases cited sustains the proposition that: "Under our decisions an owner's property is invaded when its beneficial use is impaired in the manner alleged in the first count of the declaration as well as when such owner is directly and formally excluded from

its enjoyment." The first count above referred to alleges that the defendant made an excavation so near the line of the plaintiffs' property and of such width and depth that the lateral support for their land and buildings was removed, with the result that soil from beneath their buildings escaped into the excavation, causing the buildings to settle. Neither of the cases cited is an authority for the proposition that the acts of the defendant in this case constituted an invasion of the plaintiffs' property. In the cases cited it appears that the city did invade the property of the plaintiffs therein. The grade of several streets was so changed as to cast upon the plaintiffs' land surface water which would have flowed or remained elsewhere if the grade had not been changed. The defendant in one of the cases actually dumped gravel upon the plaintiff's land. This was a direct trespass. By turning the water upon the land adjoining the street the city created a nuisance.

The rule as to sublateral support applicable to mines was suggested as a reason why the city, in some other form of action, would be liable regardless of negligence for damage to the plaintiffs' buildings caused by drawing off the quicksand beneath the plaintiffs' soil.

When one is granted the right to dig and remove minerals beneath the surface there is usually an express or implied agreement to support the land above the mine. Such agreement is one of the terms of the grant. If such agreement is violated the operator is, of course, liable because he has exceeded the terms of his grant; but the rule is not in any way applicable to the case before us where the question is merely as to common law rights of lateral—and not sublateral—support and in no way dependent upon a grant.

The majority opinion cites several English and six American cases to support the doctrine, contended for, that one, who by excavating on his own land causes the land and buildings of an adjoining owner to settle, is liable, even in the absence of negligence for all damage to the buildings,

provided the weight of the buildings is not a contributory cause of the settling.

The rule contended for by the majority is undoubtedly the rule in England but the English rule is readily traceable to another English rule which has received but slight recognition in that country, *viz.*, that one may obtain by prescription the right to have his buildings supported by the adjoining land.

It cannot be denied that the English rule of liability as to buildings has been followed by two or three American courts. However, several of the American decisions cited by the majority do not support the English rule. The damage considered in said cases was caused by the use of dynamite, the explosion of which not only wracked the buildings, by concussion, but hurled objects against them. These cases are based on the principle that one uses dangerous instrumentalities, such as dynamite, at his peril and is liable regardless of negligence. See *Hickey* v. *McCabe & Bihler*, 30 R. I. 346.

In connection with a statement of the English rule, 1 C. J. at p. 1225, contains the following language: "In most jurisdictions the right of recovery in such cases is limited to damages for the injury to the land itself, and does not include damages for injury to buildings or other improvements thereon, unless they are caused by negligence, or unless a right to support for the buildings has been acquired."

In the case before us the question whether the weight of the buildings increased the lateral pressure and thereby caused the land to settle more than it would in the absence of the buildings was not submitted to the jury. The majority opinion apparently makes the assumption that the weight of the buildings contributed in no degree to the settling of the land.

I am of the opinion that the trial court erred in charging the jury, in substance, that the defendant was liable for damage to the buildings, regardless of negligence, "if the sand or soil from the plaintiffs' land ran into the trench in

consequence of the digging in the trench and caused the plaintiffs' property to settle." There was no evidence as to the amount of damage caused to the land. Negligence was neither alleged nor proved. The case should be returned to the Superior Court for a new trial on an amended declaration charging negligence.

*Knauer & Fowler, DePasquale & Turano,* for plaintiffs.
*Clason, Brereton & Kingsley,* for defendant.