298 S.E.2d 218

**William H. NOONE, et al.**

v.

**Marion T. PRICE.**

No. 15426.

Supreme Court of Appeals of
West Virginia.

Dec. 1, 1982.

Robert G. Wolpert, Charleston, for appellants.

Jack A. Mann, Lynch, Mann & Knapp, Beckley, for appellee.

NEELY, Justice:

In 1960 the plaintiffs below, and appellants in this Court, Mr. and Mrs. William H. Noone, bought a house located on the side of a mountain in Glen Ferris, West Virginia. This house had been constructed in 1928 or 1929 by Union Carbide, and in 1964, four years after plaintiffs purchased the house, plaintiffs became aware that the wall under their front porch was giving way and that the living room plaster had cracked.

The defendant below, appellee in this Court, Mrs. Marion T. Price, lived directly below the plaintiffs at the foot of the hill in a house that was built in 1912. Sometime between 1912 and 1919 a wall of stone and concrete was constructed along the side of the hill, ten to twelve feet behind the defendant's house. This wall was a hundred to a hundred and twenty-five feet long, approximately four feet high, and of varying degrees of thickness. The wall lay entirely on the defendant's property, and was approximately ten to twelve feet from the property line that divided the defendant's property from the plaintiffs' property. The defendant purchased her house in 1955 and lived there until 1972, when she sold the property. Before the defendant's purchase, the wall had fallen into disrepair.

When the plaintiffs discovered that their house was slipping down the hill, they complained to the defendant that their problem was the result of deterioration in the defendant's retaining wall. The defendant did nothing to repair the wall and the plaintiffs repaired the damage to their house at a cost of approximately $6,000.

The action before us now was filed in 1968 for damages of $50,000 for failure of the defendant to provide lateral support for the plaintiffs' land, and her negligent failure to provide lateral support for their house. Plaintiffs alleged that the wall was constructed to provide support to the slope upon which their house was built, and that the disrepair and collapse of the wall caused the slipping and eventual damage to their property.

The defendant denied that the wall on her property provided support to the slope, or that the condition of her wall caused the slipping and damage to the plaintiffs' property. In addition, the defendant asserted that the plaintiffs were negligent in failing to take reasonable precautions to protect their own property and were estopped from suing her because the wall on her property was erected by her predecessor in title and the plaintiffs had purchased their property with knowledge of the wall's deteriorating condition.

■ Defendant made a motion for summary judgment that the circuit court granted in part. The circuit court concluded that the plaintiffs had no right to recover for damage to their dwelling house and buildings, but the court left open the question of whether plaintiffs could recover for damage to their land. The circuit court stated on the record that "there is a duty of

lateral support to the land but not to a structure on the land." Unfortunately, while the circuit court stated an entirely correct principle of law, his disposition of this case on summary judgment was inappropriate. While an adjacent landowner has an obligation only to support his neighbor's property in its raw or natural condition, if the support for land in its raw, natural condition is insufficient and the land slips, the adjacent landowner is liable for both the damage to the land and the damage to any buildings that might be on the land. Consequently, we reverse and remand.

## I

■ This case provides an opportunity that we have not had for many years to address the obligations of adjoining landowners to provide lateral support to each other's land.[1] Support is lateral when the supported and supporting lands are divided by a vertical plane. The withdrawal of lateral support may subject the landowner withdrawing the support to strict liability or to liability for negligence. We have recognized both forms of liability in *Walker v. Strosnider*, 67 W.Va. 39, 67 S.E. 1087 (1910) and this case, remarkably enough, is still in harmony with the modern weight of authority as articulated in the *Restatement (Second) of Torts*.

■ As a general rule, "[a] landowner is entitled, *ex jure naturae*, to lateral support in the adjacent land for his soil." Point 2, syllabus, *McCabe v. City of Parkersburg*, 138 W.Va. 830, 79 S.E.2d 87 (1953). Therefore, as we said in syllabus point 2 of *Walker, supra:*

"An excavation, made by an adjacent owner, so as to take away the lateral support, afforded to his neighbor's ground, by the earth so removed, and cause it, of its own weight, to fall, slide or break away, makes the former liable for the injury, no matter how carefully he may have excavated. Such right of support is a property right and absolute."

■ An adjacent landowner is strictly liable for acts of commission and omission on his part that result in the withdrawal of lateral support to his neighbor's property. This strict liability, however, is limited to land in its natural state; there is no obligation to support the added weight of buildings or other structures that land cannot naturally support. However, the majority of American jurisdictions hold that if land in its natural state would be capable of supporting the weight of a building or other structure, and such building or other structure is damaged because of the subsidence of the land itself, then the owner of the land on which the building or structure is constructed can recover damages for both the injury to his land and the injury to his building or structure.[2] The West Virginia cases are largely consistent with this position, although none has expressly so held.[3]

■ The converse of the preceding rule is also the law: where an adjacent landowner provides sufficient support to sustain the weight of land in its natural state,

---

1. The last case we decided on this issue was *Beaver v. Hitchcock*, 151 W.Va. 620, 153 S.E.2d 886 (1967).

2. *See, e.g., Williams v. Anderson Construction Co.*, 105 F.Supp. 497 (D.Alaska, 1952); *Gladin v. Von Engeln*, 195 Colo. 88, 575 P.2d 418 (1978); *Smith v. Howard*, 201 Ky. 249, 256 S.W. 402 (1923); *Busby v. Holthaus*, 46 Mo. 161 (1870); *Riley v. Continuous Rail Joint Co.*, 110 App.Div. 787, 97 N.Y.S. 283 (1906), *aff'd*, 193 N.Y. 643, 86 N.E. 1132 (1908); *Prete v. Cray*, 49 R.I. 209, 141 A. 609 (1928); *Stearns v. City of Richmond*, 88 Va. 992, 14 S.E. 847 (1892); *Williams v. Southern Railway Co.*, 55 Tenn.App. 81, 396 S.W.2d 98 (1965); and *Restatement (Second) of Torts* § 817 comment n (1979).

3. *E.g., Peddicord v. County Court*, 121 W.Va. 270, 3 S.E.2d 222 (1939) [jury question whether weight of improvements contributed to damage]; *Kunst v. City of Grafton*, 67 W.Va. 20, 67 S.E. 74 (1910) [allowed damages to building caused by diversion of water and increased lateral pressure from construction on adjoining lot]; *but cf. McCabe v. City of Parkersburg*, 138 W.Va. 830, 79 S.E.2d 87 (1953) [Damages for loss of lateral support for building not recoverable absent negligence; however, plaintiff had based claim on absolute right to lateral support, which is not applicable to buildings; no question presented whether weight of building contributed to subsidence of land.]

but the land slips as a direct result of the additional weight of a building or other structure, then in the absence of negligence on the part of the adjoining landowner, there is no cause of action against such adjoining landowner for damage either to the land, the building, or other structure.[4]

██ The issue in the case before us concerns the proper application of the strict liability rule. The circuit court improperly awarded summary judgment because the plaintiffs should have been allowed to prove that their land was sufficiently strong in its natural state to support the weight of their house, and that their house was damaged as a result of a chain reaction that began when the land in its natural state, toward the bottom of the hill, slipped as a result of the withdrawal of lateral support occasioned by the deterioration of the retaining wall, causing, in turn, successive parts of the hillside to subside until the ripple effect reached the foundation of the plaintiffs' house.

The cases recognize that lateral support sufficient to hold land in its natural state may be insufficient to support the additional weight of a building or other structure. If, therefore, as a result of the additional weight of a building or other structure, so much strain is placed upon existing natural or artificial lateral support that the support will no longer hold, then in the absence of negligence, there is no liability whatsoever on the part of an adjoining landowner. In the case before us, this means that if the weight of the plaintiff's house placed so much pressure on the soil that the house itself caused the subsidence, and the land would not have subsided without the weight of the house, then the plaintiffs cannot recover.

## II

██ A theoretical problem that presents itself in all of these cases is the extent to which the obligation of support runs with the land. The weight of authority appears to be that where an actor, whether he be an owner, possessor, lessee, or third-party stranger, removes necessary support he is liable, and an owner cannot avoid this liability by transferring the land to another.[5] Nevertheless, when an actor who removes natural lateral support substitutes artificial support to replace it, such as a retaining wall, the wall then becomes an incident to and a burden on the land upon which it is constructed, and subsequent owners and possessors have an obligation to maintain it.[6]

██ In the case *sub judice*, the plaintiffs' land had no buildings erected on it at the time the defendant's predecessor in title built the retaining wall on his property; therefore, he needed only to erect a retaining wall sufficient to provide support for their soil. He was not required to furnish a wall sufficient to support any structure which they might erect upon their property. The defendant, as his successor, merely had the obligation to maintain the wall to support the plaintiffs' land in its natural condition. Defendant was not required to

---

4. *Walker v. Strosnider*, 67 W.Va. 39, 67 S.E. 1087 (1910); *see also Moellering v. Evans*, 121 Ind. 195, 22 N.E. 989 (1889); *Covell v. Sioux City*, 224 Iowa 1060, 277 N.W. 447 (1938); *Braun v. Hamack*, 206 Minn. 572, 289 N.W. 553 (1940); *Whitmore v. Fago*, 93 N.Y.S.2d 672 (N.Y.S.Ct. 1949); *Truscott v. Peterson*, 78 N.D. 498, 50 N.W.2d 245 (1951); *Prete v. Cray*, 49 R.I. 209, 141 A. 609 (1928); *Williams v. Southern Railway Co.*, 55 Tenn.App. 81, 396 S.W.2d 98 (1965); *Christensen v. Mann*, 187 Wis. 567, 204 N.W. 499 (1925); and *Restatement (Second) of Torts* § 817 comment n illustration 14 (1979).

5. *E.g.*, *Frederick v. Burg*, 148 F.Supp. 673 (W.D. Pa.1957); *Paul v. Bailey*, 109 Ga.App. 712, 137 S.E.2d 337 (1964); *First National Bank & Trust Co. v. Universal Mortg. and Realty Trust*, 38 Ill.App.3d 345, 347 N.E.2d 198 (1976); and *Restatement (Second) of Torts* § 817 comment j (1979).

6. *Urosevic v. Hayes*, 267 Ark. 739, 590 S.W.2d 77 (1979); *Sager v. O'Connell*, 67 Cal.App.2d 27, 153 P.2d 569 (1944); *Vennard v. Morrison*, 3 Conn.Cir. 120, 209 A.2d 202 (Conn.Cir.Ct.App. Div., 1964); *Gorton v. Schofield*, 311 Mass. 352, 41 N.E.2d 12 (1942); *Salmon v. Peterson*, 311 N.W.2d 205 (S.D.1981); *Foster v. Brown*, 55 D.L.R. 143, 48 Ont.L.R. 1, 10 B.R.C. 918 (Ont. App.Div.1920); *see also* Annot., 139 A.L.R. 1267 (1942); *cf. Restatement (Second) of Torts* § 817 comment k (1979) [later withdrawal of artificial support subjects one who withdraws it to liability].

strengthen the wall to the extent that it would provide support for the weight of plaintiffs' buildings.

### III

■ Since the pleadings in the case before us make reference to negligence, it is appropriate here to address the scope of a negligence theory. In general, it has been held that while an adjoining landowner has no obligation to support the buildings and other structures on his neighbor's land, nonetheless, if those structures are *actually being supported,* a neighbor who withdraws such support must do it in a non-negligent way. In an action predicated on strict liability for removing support for the land in its natural state, the kind of lateral support withdrawn is material, but the quality of the actor's conduct is immaterial; however, in a proceeding based upon negligence, the kind of lateral support withdrawn is immaterial, and the quality of the actor's conduct is material.[7] Comment e, *Restatement (Second) of Torts* § 819 succinctly explains the nature of liability for negligence.

"The owner of land may be unreasonable in withdrawing lateral support needed by his neighbor for artificial conditions on the neighbor's land in either of two respects. First, he may make an unnecessary excavation, believing correctly that it will cause his neighbor's land to subside because of the pressure of artificial structures on the neighbor's land. If his conduct is unreasonable either in the digging or in the intentional failure to warn his neighbor of it, he is subject to liability to the neighbor for the harm caused by it. The high regard that the law has by long tradition shown for the interest of the owner in the improvement and utilization of his land weighs heavily in his favor in determining what constitutes unreasonable conduct on his part in such a case. Normally the owner of the supporting land may withdraw lateral support that is not naturally necessary, for any purpose that he regards as useful provided that the manner in which it is done is reasonable. But all the factors that enter into the determination of the reasonableness or unreasonableness of the actor's conduct must be considered, and in a particular case the withdrawal itself may be unreasonable. Thus, if the actor's sole purpose in excavating his land is to harm his neighbor's structures, the excavation itself is unreasonable. Furthermore, although for the purpose of permanently leveling the land it may be reasonable to withdraw support that is not naturally necessary, it may be unreasonable to make an excavation for a building that will itself require a foundation, without providing for the safeguarding of the neighbor's structures during the progress of the work. Likewise it is normally unreasonable not to notify an adjacent landowner of excavations that certainly will harm his structures, unless the neighbor otherwise has notice.

"Secondly, the owner of land may be negligent in failing to provide against the risk of harm to his neighbor's structures. This negligence may occur either when the actor does not realize that any harm will occur to his neighbor's structures or when the actor realizes that there is a substantial risk to his neighbor's land and fails to take adequate provisions to prevent subsidence, either by himself taking precautions or by giving his neighbor an opportunity to take precautions. Although the law accords the owner of the supporting land great freedom in withdrawing from another's land support that is not naturally necessary in respect to the withdrawal itself, it does not excuse withdrawal in a manner that involves an unreasonable risk of harm to the land of another. The owner in making the excavation is therefore required to take reasonable precautions to minimize the risk of causing subsidence of his neighbor's land. In determining whether a particular precaution is reasonably required, the extent of the burden that the taking of it will impose upon

---

7. *Restatement (Second) of Torts* § 819 comment c, p. 75 (1979).

the actor is a factor of great importance."

In the case of *Walker v. Strosnider, supra,* Judge Poffenbarger, speaking for a unanimous court, explained the law of West Virginia in a way completely in accord with the modern *Restatement.* He summarized the cause of action for negligence as follows:

"The duty on the part of the excavator, as regards buildings on adjacent land, when no right of lateral support therefor has been acquired, results from the relative rights of the parties and legal principles, governing conduct. As an adjacent owner has no right of support for his buildings, he has no property right in the form or nature of an easement in his neighbor's lands. If, therefore, the latter remove a part of his land so as to endanger the building of the former, he destroys no property right,—takes away nothing that belongs to the former. It does not follow, however, that he owes him no duty in the premises. Though he has complete dominion and power over his own land and may do with it what he pleases, he is nevertheless bound, agreeably to the maxims, *'Sic utere tuo ut alienum non laedas'* and *'Prohibetur ne quis faciat in suo quod nocere posit alieno,'* to use his property in such a manner as not to injure his neighbor's. This gives the latter no property right in the land of the former. It merely gives a personal right against him. It places a restraint upon his conduct. For any lawful purpose, he may use his property, but he must use it in a lawful, that is, careful, manner. In other words, he must execute the work, as far as is reasonably practicable, and not unduly burdensome, with a view to the safety of the buildings on the adjacent property. But for this rule, he might go at any hour of the day or night, without having given notice to the adjoining owner, indicating when, how or to what extent he intended to alter the condition of his property, and make an excavation for a cellar along the entire wall of a heavy valuable building, knowing it would fall in consequence thereof, and yet intending to replace, the earth removed by a wall. He would be under no duty to vary the mode or manner of his work in the slightest degree, in respect to the time thereof or otherwise, in the interests of the safety of the building. Having thus made the excavation, he could build his wall at his leisure and would be under no duty to prosecute the work diligently even though it should be apparent that delay in this part of the work would endanger the building. Such conduct would be reckless, careless and wanton, in view of the ease with which the mode of work could be varied, in respect to time and manner, and previous notice given of the intention to alter the condition of the property, the extent of the alteration, the manner in which it is to be done and the time, so as to afford the owner of the building an opportunity to take such measures for its protection, as he might see fit to adopt. The rule requiring care, is not based upon any right of property in adjacent land for support of buildings or otherwise. It is simply a restraint upon reckless and unnecessary conduct in respect to the use of such adjacent property, fraught with danger to the building. Its justification is found in a well established principle, having wide application in English and American jurisprudence, and its application to cases of this kind is as well settled as the doctrine that the owner of a building has no right of support therefor in the land of an adjacent owner. The two propositions are asserted, side by side, in the same decisions, and in practically all of them. All authorities on the subject impose the duty of exercising care in excavating on land adjacent to a building."

67 W.Va. at 45, 46, 67 S.E. at 1090.

■ The plaintiffs contend that the defendant should be held liable for negligence in removing the support required by their dwelling, in addition to the strict liability for removing support for their soil, relying on *Walker v. Strosnider, supra; Beaver v. Hitchcock,* 151 W.Va. 620, 153 S.E.2d 886 (1967); and *Weaver Mercantile Co. v. Thurmond,* 68 W.Va. 530, 70 S.E. 126 (1911). The latter case dealt with maintaining a nuisance, and has no application to the right of lateral support. *Walker* and

*Beaver* imposed liability for damages to structures caused by negligent excavation and failure to shore up an excavation; however, they involved situations where the structures were already in existence at the time of the acts that deprived them of lateral support, and the owner of the property was the actor who caused the excavation to be made. If there are no structures on the land at the time of the excavation, the excavator owes no further duty than to refrain from removing the lateral support for the soil, or to substitute artificial support for that which is removed. His duty of support cannot be enlarged by the addition of artificial structures to the land; therefore, the duty of his successor in title cannot be greater, where she has done no act to deprive the structures of their support.

### IV

 It would appear that the case before us either stands or falls on a question of strict liability. It is admitted that the retaining wall on the defendant's property was constructed at least sixty years ago, before the construction of the plaintiffs' house, and that all parties to this action were aware of the condition of the wall. Furthermore, there is no allegation that the defendant did anything to cause the collapse of the wall, but rather only failed to keep it in repair. Therefore, if the plaintiffs can recover, they must do so by proving that the disrepair of the retaining wall would have led ineluctably to the subsidence of their land in its natural condition. If, on the other hand, the land would not have subsided but for the weight of the plaintiffs' house, then they can recover nothing.

Since the proper resolution of this issue will require the development of an appropriate factual record, the judgment of the Circuit Court of Fayette County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.