Peter **CATALANO** et al.

v.

Deborah **WOODWARD** et al.

No. 91–543–A.

Supreme Court of Rhode Island.

Dec. 15, 1992.

John D. Deacon, Jr., Providence, for plaintiff.

F. O'Halloran, Jr., Providence, Roderick Cavanagh, Wakefield, Thomas J. Capalbo, Jr., Capalbo & Capalbo, Westerly, for defendant.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on cross-appeals from a judgment entered after a jury-waived trial in the Superior Court. The controversy involved the use of a right of way and other land-use issues in Westerly, Rhode Island. We affirm in part and reverse in part.

In this case three separate actions were consolidated for trial. The plaintiffs, Peter Catalano and WHI, Inc. (Catalano), had asserted claims against John F. Felber (Felber) and Deborah Woodward (Woodward), alleging that defendants had denied plaintiffs access to a right-of-way over defendants' land and asking for an order that defendant Felber be compelled to remove a garden that obstructs a passway known as Mastuxet Terrace. In addition, the Hubbard Phelps Trust (Phelps) sued Catalano for injunctive relief alleging that Catalano withdrew lateral support for the Phelps land by excavating a slope.

The disputed parcel of land is located adjacent to Bay Street in Watch Hill, Westerly, Rhode Island. At trial there was testimony relating to the ownership of the land from 1850 through the present. In deeds that date back to 1851, language appears that refers to a right-of-way along the southerly border of the disputed parcel. Expert testimony at trial established that

this right-of-way was what has become known as Mastuxet Terrace. (See Appendix.)

For approximately fifty years prior to 1976 the entire parcel of land, which is bordered by Bay Street on the west and Mastuxet Terrace on the south, was owned by Walter S. Price. In 1976 Anne Price Earle and Will W. Price, the executors under the last will and testament of Walter S. Price, conveyed the land to the Bay Street Realty Corporation (Bay Street).

In 1977 Bay Street conveyed a segment of the land, now known as the DeCourcy parcel, to Janice M. DeCourcy and Morris Sweet. Bay Street subdivided the entire parcel in 1980 and filed the Rossi and Lewis subdivision plan in the registry of deeds. The subdivision plan, which divided the land into six parcels, clearly designated Mastuxet Terrace as a road. We shall refer to these parcels in this way: parcels 1 and 2 as the Catalano parcels, parcel 3 as the Woodward parcel, parcel 4 as the Felber parcel, and the DeCourcy parcel. The plan also depicted a right-of-way that connected parcel 1, to Mastuxet Terrace, by way of a gravel driveway running across the rear of parcel 3, the Woodward parcel, and parcel 4, the Felber parcel.

In 1981 Bay Street deeded parcel 4 of the subdivision to John F. and Marcia H. Felber. The deed of conveyance contained the following language: "Said premises are conveyed subject to a right of way of record as shown on said plan 'Plan showing property of Bay Street Realty Corp.'" This right-of-way is a portion of the gravel driveway depicted in the subdivision plan.

In 1986 Bay Street conveyed their entire interest in the land to Mastuxet Terrace Associates (Mastuxet). This deed had two exhibits, the second of which purported to grant to Mastuxet the right-of-way across parcel 4 that Bay Street had reserved in its earlier transfer to the Felbers. This "exhibit" also contained a clause that reserved, "in favor of Bay Street Realty Corp., its successors, grantees and assigns, and a grant to Janice M. DeCourcy Sweet, her legal representatives, grantees and assigns, of: (1) a right of way, 15 feet in width, for purposes of ingress, egress, utilities." This right-of-way is consistent with the comparable area shown on the 1980 subdivision plan.

In March 1986 Mastuxet deeded parcels 1 and 2 to plaintiff Catalano and parcel 5 to the Felbers. Finally, in April 1986, Mastuxet deeded parcel 3, the remaining parcel in the subdivision, to Deborah Woodward, Herbert A. Perluck, and Gertrude H. Perluck (hereafter Woodward), as joint tenants. The deed to Catalano did not specifically grant an easement over parcels 3 and 4. However, it did refer to the Rossi and Lewis subdivision plan. The deed also contained a clause that conveyed "all those certain rights, privileges, easements, rights of way, and conditions and limitations all as contained in a certain deed of Bay Street Realty Corporation to the within grantor."

The deed from Mastuxet to Woodward conveyed the property subject to the right-of-way that had been described in the previously executed deed to the Felbers. The Woodward deed also contained a clause whereby a right-of-way across parcel 3 was granted to Janice M. DeCourcy Sweet. The same clause also contained language purporting to reserve an easement in favor of Bay Street. Parcels 1 through 5 and the so-called DeCourcy parcel are currently owned by Catalano, Woodward, Felber, and DeCourcy.

Parcels 2, 3, 4, and the DeCourcy parcel, which front on Bay Street, house various shops and businesses. Parcel 1 is located directly behind these lots and contains a small driveway that lies north of parcel 2, allowing direct access to Bay Street. For many years the tenants and the employees of these businesses parked their cars behind the buildings on a portion of what is now parcel 1. There was testimony at trial that these tenants drove from Bay Street onto Mastuxet Terrace and entered the parking area via the gravel driveway that runs over parcels 3 and 4.

In 1977 the then owner of the undivided land received a permit to operate a commercial parking lot on what is now parcel 1. Cars using this lot entered and exited from the Bay Street driveway. Sometime after 1980, the owners of the lot began

placing a chain across the Bay Street entrance at 5 p.m. to close the lot while allowing the remaining patrons to exit via the gravel driveway and Mastuxet Terrace. In addition, on occasions when the lot would be filled to capacity, the Bay Street entrance would be obstructed and patrons would exit via the gravel road, over lots 3 and 4, even during the hours of 8 a.m. to 5 p.m.

In 1986 Catalano leased parcel 1 to WHI, Inc., which owns the property that abuts parcel 1 to the northeast and is the site of the Watch Hill Inn. Catalano has constructed a ramp on the northeast corner of parcel 1 to allow vehicles from the Watch Hill Inn direct access to his parking facility. There was conflicting testimony at trial about whether the Bay Street entrance to parcel 1 has been permanently closed. The resolution of that issue is not critical to the questions presented by this case.

## I

The first issue we reach is whether the trial court was correct in ruling that parcel 4 is subject to an easement in favor of parcel 1. We affirm.

When Bay Street conveyed parcel 4 to the Felbers, the grant was specifically subject to the reservation of an easement in favor of the remaining parcels of land. The deed by which the property was conveyed, made specific reference to the Rossi and Lewis subdivision plan. That plan depicts an easement across parcel 4. This court has previously held that a deed which refers to a plat or subdivision plan will effectively grant rights to use roads delineated in the plan even if the plan has not been previously recorded. *Robidoux v. Pelletier*, 120 R.I. 425, 436, 391 A.2d 1150, 1156 (1978). Our holding in *Robidoux* binds parties to an earlier plan of subdivision.

In the case before us, the plan had been correctly filed prior to Bay Street's conveyance to the Felbers. This action constituted adequate notice to the grantees that they took their land subject to an easement

and successfully created a right in Bay Street as the owner of the remaining land.

It has been long settled in this jurisdiction that "when a plat is referred to in a deed, for a description of the premises intended to be conveyed, it becomes for this purpose a part of the deed," *Kenyon v. Nichols*, 1 R.I. 411, 414 (1851). In this case, the Rossi and Lewis plan was incorporated into the deed from Bay Street and had the effect of successfully reserving an easement across parcel 4, in favor of the remaining parcels.[1]

The easement subsequently passed to Catalano upon his purchase of parcels 1 and 2. Since there was no evidence to indicate that Bay Street had intended to reserve a mere personal right, the easement will be held to be appurtenant. *Cadwalader v. Bailey*, 17 R.I. 495, 499, 23 A. 20, 21–22 (1891).

By so holding we are giving effect to the intention of Bay Street and the Felbers at the time the property was conveyed. In interpreting a deed this court "will consider all of the facts and circumstances existing at the time of its execution * * * and effect will be given to the intention of the parties whenever that intent can be ascertained." *Sullivan Granite Co. v. Vuono*, 48 R.I. 292, 294–95, 137 A. 687, 688 (1927). It is clear from the evidence that the parties intended that parcel 4 be subject to an easement in favor of the other parcels.

## II

Catalano has appealed from the trial court's decision that he did not possess an easement of passage across parcel 3. The trial court found, that through their conveyance of the property to Mastuxet, Bay Street attempted to reserve an easement for the benefit of the DeCourcy parcel but did not intend to create an easement in favor of parcels 1 and 2. We disagree.

The defendants argue that Bay Street's attempted reservation of an easement across parcel 3 was void because Bay Street did not retain any land to which the

---

1. We do not reach the issue of whether such a reservation would also benefit the DeCourcy parcel. The parties reached a settlement on this issue during the pendency of the action in the Superior Court, and it is not an issue on appeal.

easement could attach. The defendants would characterize this transaction as an attempt to reserve an easement appurtenant, that was severed from the land and therefore extinguished. They also argue that any attempt by Mastuxet to convey such an easement to Catalano was void.

As we noted previously, a deed that refers to a specific plat or subdivision plan in a sense incorporates that plat or subdivision. The deed by which Mastuxet conveyed parcels 1 and 2 specifically refers to the Rossi and Lewis subdivision plan. This plan clearly delineates an easement across parcel 3. The reference in this deed was sufficient to create an easement in favor of parcels 1 and 2.

The earlier deed from Bay Street to Mastuxet contained language purporting to reserve for itself an easement over parcel 3. The defendants contend that because no land supported this easement, it could not stand. They cite *Cadwalader v. Bailey*, 17 R.I. 495, 23 A. 20 (1891), in support of their argument that an easement appurtenant is extinguished when severed from the dominant estate. We believe that is a mischaracterization of the effect of Bay Street's "reservation." It has long been the policy of this court to ascertain the intent of the parties when construing written instruments. *Pawtucket Machinery and Supply Corp. v. Monroe*, 73 R.I. 162, 164, 54 A.2d 399, 400 (1947). Although the deed in this case was inartfully drawn, we can infer the intent of the parties. Bay Street's intention was to grant, together with the land, an easement over parcel 3.

■ When Bay Street granted the land to Mastuxet and in the same instrument granted an easement over part of the conveyed property, the easement was not destroyed. Generally, when a single owner is in possession of two contiguous parcels of land, one of which has historically been used for the benefit of the other, and that owner conveys the encumbered parcel, he cannot retain a right to continue the use of the conveyed parcel without a specific res-

ervation. *Kenyon v. Nichols*, 1 R.I. at 413. Because unity of possession destroys existing easements, no easement can be created over a section of land that is unified in the possession of one owner. The present case is distinguishable from that general principle. When a portion of land is granted from a larger parcel, the grantee can successfully claim rights of easement to a remaining portion, if it had traditionally been used to benefit his land and a right of way has been delineated on a plat or subdivision and that subdivision has been properly recorded and referred to in the deed. When Mastuxet granted parcels 1 and 2 to Catalano with specific reference in the deed to both the Rossi and Lewis Plan and the prior deed from Bay Street, it successfully granted an easement appurtenant to Catalano.

■ Catalano would also be able to sustain his claim of an implied easement across parcel three. We have previously held that; "[u]pon the severance of an heritage, a grant will be implied of all those continuous and apparent easements which have in fact been used by the owner during the unity, though they have no legal existence as easements." *Kenyon v. Nichols*, 1 R.I. at 417. There was testimony at trial that the gravel road had been used as an entrance and an exit during unity. Because Mastuxet retained ownership of parcel 3 at the time of the conveyance to Catalano even absent the express reference to the Rossi and Lewis plan, Catalano would be entitled to claim an easement by implication across parcel 3.

Although it found that Catalano did not have an easement over parcel 3, the trial court entered a conditional order limiting use of the right-of-way should an easement be found to exist. The order imposed several limits on usage. However, Catalano has appealed only the injunction prohibiting the use of the right-of-way between the hours of 8 a.m. and 5 p.m.[2]

■ The defendants argue that Catalano's use of the right-of-way has overbur-

---

**2.** Catalano did not appeal the trial justice's rulings that; (1) trucks servicing the Watch Hill Inn cannot use the right-of-way, (2) any cars in excess of ninety-two using the parking lot cannot use the right-of-way, (3) that Catalano may not place a permanent barrier across the Bay Street entrance and (4) that he may not post signs instructing all traffic to exit across the right-of-way.

dened the easement and cite this court's ruling in *Frenning v. Dow*, 544 A.2d 145 (R.I.1988), in support of this argument. In *Frenning* we upheld the trial court's determination that an easement had been overburdened by its use for the benefit of land contiguous to the dominant estate. The defendants urge that this ruling necessitates a finding that because Catalano constructed a ramp from the Watch Hill Inn onto parcel 1, he has overburdened the easement. The facts of this case do not warrant such a finding.

Parcel 1 has been used as a parking facility for several years. The fact that some, or all, of the cars using this facility now enter via the property of the Watch Hill Inn, and exit through the right-of-way, does not indicate that the easement is being used for the benefit of land that is not part of the dominant tenement. It is immaterial where the cars using the parking facility originate. The principle that an easement may only be used by the dominant tenement is not disturbed by our finding. Parcel 1 is still being used as a parking lot. There is no evidence that more than ninety-two vehicles are parked there at any time.

The trial court's finding that the easement is being overburdened was based upon several conditions in existence, or contemplated, at the time of trial. Because Catalano has appealed only the time limitations imposed by the judge's order, and presumably will comply with the other orders, the other factors are not before us. Therefore, without a finding that use during the hours of 8 a.m. and 5 p.m. alone constitutes overburdening, the trial court's order cannot stand. The trial court had no basis, or authority, to impose hours of use upon the owner of an express easement when there had never been such a limitation on its use previously.

### III

At the conclusion of trial Catalano amended his complaint to add an allegation that the garden, which Felber maintains on the edge of parcel 4, encroaches upon Mastuxet Terrace. He sought an order to remove the encroaching portion of the garden. Felber responded by asserting that he had acquired title, by adverse possession, to the portion of Mastuxet Terrace upon which his garden was situated. The trial court ruled that Felber had failed to satisfy his burden of proof with respect to a claim of adverse possession and consequently ordered him to remove the portion of the garden that obstructs Mastuxet Terrace. On appeal Felber has again argued that he has acquired title to the disputed segment of Mastuxet Terrace. This argument is without merit.

■ The trial court found that Mastuxet Terrace had been depicted as a street on the Rossi and Lewis Plan. The recording of a plat or subdivision, which includes streets, constitutes the dedication of such streets to the public. *Gammons v. Caswell*, 447 A.2d 361, 365 (R.I.1982). Once a street has been dedicated there must be some form of acceptance for the state or local government to acquire as a public highway. "Such an acceptance may be accomplished by public user or by appropriate action on the part of public authorities." *Id.* at 366. The continued use of Mastuxet Terrace by the public constituted acceptance, and this way is now a public highway of the town of Westerly.

■ The fact that Mastuxet Terrace is a public highway defeats Felber's claim of adverse possession. It has been long established that one cannot gain title to a public highway, or any portion thereof, by adverse possession. *See Parrillo v. Riccitelli*, 84 R.I. 276, 123 A.2d 248 (1956); *Knowles v. Knowles*, 25 R.I. 325, 55 A. 755 (1903). Therefore, that portion of the judgment ordering Felber to remove the flower bed is affirmed.

### IV

The final issue before us is whether the trial court properly ruled that Catalano wrongfully withdrew lateral support from the land owned by Phelps. Phelps owns the parcel of land that borders parcel 1 on the southeast. The Phelps property is approximately fifteen feet higher in elevation than parcel 1 and is bordered by a slope that joins the two parcels of land. Catalano has removed the brush and growth on the slope and replanted it with grass, which is the basis of the Phelps claim.

The trial court held Catalano strictly liable for the damage caused by his withdrawal of lateral support. On appeal Phelps has relied on this court's ruling in *Prete v. Cray*, 49 R.I. 209, 141 A. 609 (1928), to support his contention that strict liability is the applicable standard and that negligence need not be shown. Phelps has mischaracterized the *Prete* decision. In that case this court adopted the general principle that when an adjoining landowner removes lateral support and thereby causes his neighbor's land, in its natural state, to subside, he is strictly liable for any damage. *Id.* at 212, 141 A. at 611. It was undisputed that the Phelps land had been the site of the Atlantic Hotel until it was destroyed by fire in 1916. The foundation of the hotel remained on the premises and was filled many years earlier. The Phelps land therefore was not in its natural state when Catalano excavated the slope.

In *Prete* the court also addressed the issue of liability when the adjoining land is improved and it is shown that it was not the structure but the excavation that caused the land to subside and in fact the damage would have occurred had the structure not existed. In that situation the court held that the adjoining landowner must be liable for damages when "such injury is due to an interference with the lateral support of the soil, and cannot be ascribed to the weight and pressure of the buildings upon the land." *Id.* at 213, 141 A. at 612.

The trial court held Catalano to be strictly liable on the basis of its finding that the Phelps land did not begin to subside until Catalano began work on the slope, thereby concluding that the building did not cause the damage. However, the question that must be answered is not whether the improved land would have given way without the excavation of the adjacent land but whether or not the excavation would have caused the unimproved land to subside. There was no evidence at trial that the Phelps land would have subsided had it been in its natural state.

Therefore, the issue becomes one of negligence. Catalano cannot be held strictly liable; in order to be liable he must have acted negligently. There was no finding of negligence by the trial court, nor was there any evidence of negligence presented at trial. Therefore, the judgment of the trial court is reversed with respect to this issue.

For the foregoing reasons the judgment of the trial court granting the plaintiff Catalano an easement across parcel 4 and ordering defendant Felber to remove the garden that obstructs Mastuxet Terrace is affirmed. The judgment that parcel 1 does not possess an easement across parcel 3, and in the event one is found, limiting use of that easement, as well as the judgment holding Catalano strictly liable for withdrawal of lateral support from the Phelps land are both vacated. The case is remanded to the Superior Court for entry of judgment consistent with this opinion.

APPENDIX